## S. E. NORRIS v. THE CITY OF WACO.

### (Case No. 1209.)

1. MUNICIPAL TAXATION.— What property shall be embraced within a municipal corporation, and whether it shall be taxed for municipal purposes, are political questions to be determined by the law-making power, and an attempt by the judiciary to revise the legislative action would be a usurpation.

2. TAXATION.— Taxes are within the meaning of the constitution "equal and uniform," when no person or class of persons in the territory taxed is taxed at a higher rate than are other persons in the same district upon the same value or thing, and when the objects of taxation are the same by whomsoever owned or whatever they be.

3. TAXATION.— In construing a legislative act which incorporated within city limits property used exclusively for rural purposes, it will be conclusively presumed, on a question of taxation, that the legislature, in passing the act, determined with a view solely to the public good the benefits to accrue to the public and to the property owner. It would be a usurpation of power by the judiciary were it to assume the right to revise the legislative action because of the inequality of benefits resulting from municipal taxation of such property.

4. EMINENT DOMAIN — CONSTITUTIONAL LAW.— The constitutional inhibition against taking private property for public use without compensation to the owner, has reference solely to the taking of private property for public use under the right of eminent domain.

5. TAXATION.— When private property is taken under the taxing power, the tax-payer receives his just compensation in the protection which government affords to his life, liberty and property, and in the increased value of his possessions resulting from the use to which the government applies the money raised by the tax.

Appeal from McLennan. Tried below before the Hon. B. W. Rimes.

Suit by injunction to restrain the collection of taxes. The bill charged:

1. Formal allegations.

2. That the city of Waco was incorporated on the 26th of April, 1871.

3. That prior to said last named date, the city had been incorporated, and at the said time had legal existence as a corporation.

4. At the time (26th of April, 1871) the city had a population of about five or six thousand inhabitants, and included within its corporate limits about one thousand acres of land, of which less than ten acres were used for business purposes, and less than half the remainder was used for dwelling-houses. A large part of the lands was not laid off into streets, lots and blocks, and a large part thereof, believed to be one-fourth, had not yet been so laid off, nor used for city purposes.

5. For some time prior to the passage of the said act of incorporation there was another charter corporation, styled The Waco & Northwestern Railroad Company, then and before engaged in constructing its road from the town of Bremond, in Robertson county, to Waco city, and in order to facilitate it in the construction of its said road, its officers and agents had insisted that the citizens in and about Waco should subscribe for stock in said corporation, and, among others, James M. Norris, now deceased, then the husband of complainant, was importuned to so subscribe, he then living outside the corporate limits of said city, and owned about three hundred and sixty acres of land outside said limits, but near thereto. He and others living near said city declined all said solicitations.

6. The said railroad company was, about the date of the act reincorporating said city, exhausted of means, and the construction of said road was about to cease for want of funds.

7. For the purpose of raising funds, the officers and agents of said railroad company, with the countenance of other citizens of the city, conceived the idea of obtaining for the city a new charter from the legislature, largely extending in area the corporation limits, and introducing into the charter a provision, under which, on certain terms, the corporation so established should have the right to subscribe for stock in said railroad corporation, and pay the same with bonds of the city, to be issued for that purpose, for the redemption of which bonds, and the interest to accrue thereon, all the property within the city limits, as thus extended, was to be taxed.

8. The object thus conceived was carried out, so far as to procure the passage of the act mentioned, of date 26th of April, 1871, whereby the land of complainant was embraced in the corporate limits, which she alleged was for the sole purpose of subjecting it to taxation under forms of law to aid in raising money for the benefit of said railroad company, and for raising money to defray the ordinary expenses of the city government.

9. The extension of the limits of the city corporation more than trebled the acreage, including complainant's three hundred and sixty acres, in city limits, and that, too, when not one-half of the original area was being used for business, residences of the citizens, or city purposes.

10. At the date of said act, the Norris land consisted of three hundred and sixty acres, all enclosed, of which two hundred acres were in cultivation, planted in corn and cotton, and the remainder used as a pasture, and densely covered with large forest trees, such as grow in the valley of the Brazos river, which land has ever since remained under fence, and been used solely for the purposes aforesaid. It was the homestead of the said James M. Norris, and is now the homestead of complainant. There was no street or highway running through the land. No demand had ever been made by the city to open up streets through said land, or to lay it off in subdivisions.

11. There was between said three hundred and sixty acres and the business portion of said city a tract of about fifty acres, on which there are no business or dwelling houses, streets running through, nor subdivisions.

12. There is no use for said three hundred and sixty acres of land for city purposes; it can only be utilized as it now is, viz., for farming purposes.

13. The said J. M. Norris, in his life-time, was, and complainant since has been, willing to open said lands for city purposes whenever the necessities of the city should demand, but that to now lay off said lands into subdivisions, streets, etc., or to have done so heretofore, would have been and would now be only destructive of farming interests, with no benefit to the city.   .   .   .

15. Including said three hundred and sixty acres, there are now, inside the corporate limits of Waco, between seven hundred and one thousand acres of land actually cultivated in cotton, corn and other grain, and as much more unoccupied, and used for no purpose whatever.   .   .   .

19. By virtue of the said charter, 26th of April, 1871, soon after

the passage thereof, said city subscribed for $100,000 of stock in said railroad company, and issued its bonds in payment therefor, payable in twenty years, interest at twelve per cent., payable semi-annually, and by ordinance provided for the payment of said interest and the redemption of the bonds by taxing all the property in the city limits as extended.

20. Said city has also, since and under said charter, provided for lighting the city by gas, protecting it against fire, and made other provisions for controlling and managing the city, in which complainant has no more interest than if she lived five miles in the country.

21. If complainant is forced to pay said taxes required of her by the ordinances of said city, it would be on her most grievous and oppressive, for which she will not receive the slightest advantages in return; on the contrary, the land would be depreciated in market value by the tax burden placed on it, with no corresponding advantages or benefit.

22. That so to enforce the payment of money by her in the shape of taxes, no compensation being returned, would be violative of her rights under the constitution of the state of Texas and of the United States.

23. Said charter was procured solely for the purpose of increasing the revenues of the city and aiding in the construction of said railroad, without regard to the rights of those whose lands were included in the extended limits, and when there were no city necessities for such inclusion.   .   .   .

25. Said property has been assessed by the assessor of said city for city taxes for the years 1874 and 1875, and the enforcement of said assessments is threatened. Said taxes so assessed amount to over $300; the collection of said taxes, as also said judgment, will be enforced unless such collection shall be restrained.   .   .   .

27. Since the land was embraced within the city limits, there has never been a city official on it on any business for the city, and no ordinance of the city is enforced on said premises, except that for the collection of taxes.

28. Prayer for injunction to restrain the city of Waco from the collection of taxes, both on the value of said land or any personal property owned by complainant, and for relief, general and special.

Temporary injunction was granted.

General demurrer filed by defendant November, 1876.

The demurrer was sustained and bill dismissed at cost of plaintiff, May 6, 1881.   .

*Jones & Kendall* and *Walton, Green & Hill*, for appellant.— The assignments of error constitute, when combined, one proposition, which is: The court erred in sustaining defendant's general demurrer, and dismissing plaintiff's bill at her cost. Cheeney *v.* Hooser, 9 B. Mon., 330; Sharp *v.* Dunovan, 17 B. Mon., 223; Southgate *v.* Covington, 15 B. Mon., 491; Maltus *v.* Shields, 2 Met. (Ky.), 553; 2 Dillon on Corp., 794, 795; Courtney *v.* Louisville, 12 Bush (Ky.), 419; 8 Bush (Ky.), 607; Langworthy *v.* Dubuque, 13 Iowa, 86; Fulton *v.* Davenport, 17 Iowa, 404; Durant *v.* Kaufman, 34 Iowa, 194; Bradstreet *v.* City of Omaha, 1 Neb., 16; Dissenting opinion of Agnew, Chief Justice, in Kelley *v.* City of Pittsburg, 5 Rep., 374; Cooley on Taxation, 104. *Contra*, see Martin *v.* Dix, 52 Miss., 53 (24 Am. Rep., 661); 1 High on Inj., 2d ed., § 547; Cypress Draining Co. *v.* Hooper, 2 Met., 350; Argebuist *v.* Louisville, 2 Bush, 37; Morford *v.* Urger, 8 Iowa, 85; Deeds *v.* Sanborn, 26 Iowa, 419; Dieman *v.* Ft. Madison, 30 Iowa, 542; Newark *v.* New Jersey, 13 Am. Law Reg., 441; Weisman *v.* Douglas, 64 N. Y., 90; Kelley *v.* City of Pittsburg, 5 Rep., 374.

*Alexander & Wenter*, for appellee.— The petition shows an exercise of legislative power in the extension of the territorial limits of a corporation, and the authorization of a uniform tax for a public use, that said power was exercised within constitutional bounds, and the judgment of the legislature is not subject to revision by the judicial power. San Antonio *v.* James, 28 Tex., 30; Martin *v.* Dix, 52 Miss., 53; Shunway *v.* Bennett, 19 Mich., 464; Kirby *v.* Shaw, 19 Pa. St., 258–61; Kelley *v.* Pittsburg, 85 Pa. St., 170; Cooley's Const. Lim., 118, 119, 167, 168, note 2, 170–73, 500, note 1, 192, 193; Durant *v.* Kaufman, 34 Iowa, 194; Dillon on Mun. Corp., 23–30; id., 3d ed., 795–6; Turner *v.* Althaus, 6 Neb., 54; Cooley on Taxation, 119, 120; Potter's Dwarris, 415, 416.

Stayton, Associate Justice.— This action was brought by Mrs. Norris to enjoin the collection of taxes for the years 1874 and 1875, and to enjoin the collection of a judgment which the city of Waco had obtained against her for the taxes of 1873.

Pending the suit some taxes were paid by her under protest, and that fact was set up by amendment with a prayer for the recovery thereof.

It does not clearly appear whether all the taxes due at the time of filing the amendment were paid or not, but in considering the case we will regard such to be the effect of the averment.

The ground upon which the tax is resisted is, that the land of the appellant upon which the tax was levied, although embraced within the city limits, is rural, consisting solely of farm and pasture lands, in no way benefited by the expenditure of the money raised by the city by taxation, nor by the fact that it is within the jurisdictional limits of the city.

The petition states facts which go to show the character of the land taxed, and that it will in no way be benefited by the expenditure of the money raised by the city through taxation, in as strong a manner as it could well be stated, unless the contiguity of the property to the city was denied.

An injunction was granted, which upon demurrer was dissolved, and judgment entered dismissing the cause. From that judgment this appeal is prosecuted.

It is alleged in the petition that the property taxed is situated within the city limits as defined in the charter which was granted by a special act of the legislature, and it is also alleged that the charter authorized the assessment and collection of the taxes complained of.

It is not questioned that the taxes were levied for a proper municipal purpose; hence that question is not before us, and the sole question for our determination is, can lands situated within the limits of a municipal corporation, which are used solely for agricultural or pastural purposes, be subjected to the same rate of municipal taxation as property which is strictly urban, and which may therefore be more directly benefited by the expenditure of money raised by such taxation?

This question is one upon which courts distinguished for their learning have come to different conclusions, and a review of the diverse decisions in this opinion would not tend to relieve the question of its embarrassment. We will dispose of the question by applying to it those principles of law which have been thought to empower or restrain municipal corporations in the exercise of such a right.

Under our form of government, it being departmental in character, the taxing power rests with the legislature, which, except in so far as it is restrained by limitations imposed by the federal or state constitution, is practically unlimited, unless it be by the application of the general principle that taxation is only authorized for a public purpose.

In this matter, the legislature has given to the city of Waco the power and authority to levy the taxes complained of upon the prop-

erty within the city limits; hence in this respect the power of the
municipality to levy the tax is as ample as is that of the legislature,
and unless the exercise of this power be in conflict with some con-
stitutional provision, or the purpose be not a proper municipal one,
which is not contended, the taxation must be held binding upon all
persons and things within the territorial limits of the municipality.

The contention is not that the tax levied was not a proper one to
be levied upon that part of the city of Waco which is really urban,
but that notwithstanding that it is so, the property on which the
tax was levied was not properly taxable for such purpose.

The legislature has declared that it was proper to embrace the
property in the city limits, and that it was proper to levy a tax
upon it as upon the other land within the city, for the purpose of
defraying the current expenses of the municipality, and paying the
interest and principal of its bonded debt.

These were declarations which the legislature had power to make
in the form of a solemn statute, having all the binding force and
obligation of law, and they are to be presumed to have been made
after an examination of all the facts necessary to a fair and honest
determination of the question, and should be held conclusive, unless
in conflict with some constitutional provision.

As to this the courts have the power to inquire, for it involves
questions judicial in character; but what property shall be embraced
within a municipal corporation, and whether the same shall be taxed
for municipal purposes, presents questions essentially political, which
by the constitution are to be determined by the legislature, and an
assumption by the judiciary of power to revise the action of the
legislature in such respect would be a usurpation.

Some of the cases in which the question involved in this case has
been considered seem to hold that a tax levied for municipal purposes
upon lands situated as are those of the appellant, is illegal, for the
reason that such taxation is not "equal and uniform." If by this
is meant that the pecuniary benefit to be derived by every person who
pays taxes shall be equal, there would be much force in this posi-
tion, but such is not the meaning of the language.

Taxes are said, within the meaning of the constitution, to be
"equal and uniform," when no person nor class of persons in the
taxing district, whether a state, county, or other municipal corpora-
tion, is taxed at a different rate than are other persons in the same
district upon the same value or the same thing, and where the
objects of taxation are the same by whomsoever owned, or whatever
they be.

Under the present and former constitution of this state, there can be but little question in this regard, in so far as an *ad valorem* tax upon property is concerned, for all property, save such as the legislature is authorized to exempt from taxation, must be taxed in proportion to its value.

To hold that each person must receive the same benefit as another may from the expenditure of money raised by taxation would be to hold that the law required an impossibility, for, in the very nature of things, some persons will derive greater pecuniary benefit from the expenditure of money for strictly public purposes than will others. In fact, some may receive no benefit whatever, save such as results to them from the preservation of order, protection to property, and the general prosperity which results therefrom, while others may and will be directly benefited by the increased value of their property and increase to their business which results from the expenditure of money raised by taxation, for purposes in every respect strictly public.

In this case, the appellant does not claim that her property is taxed while property of the same kind, belonging to other persons, and situated within the city limits, is not taxed; nor is it claimed that a higher rate of taxation is imposed upon her property than is imposed upon all other property within the corporate limits; but the complaint is, that the appellant does not receive so great a benefit as do other persons living in different parts of the city, by the expenditure of the money raised by the tax complained of.

This may operate harshly or even unjustly upon the appellant, but the courts have no power to interfere with the exercise of discretion by the legislature, in regard to a matter exclusively confided to it by the constitution, simply because it may be unjust. If, in the opinion of the legislature, the property of the appellant was so situated, with reference to the business parts of the city, as to require its incorporation therein, it must be conclusively presumed that the legislature in its own way weighed the benefits to the appellant and to the public to be derived therefrom, and the propriety of imposing the burden complained of, and that the same was done with a view solely to the public good, and it would be a usurpation of power by the judiciary to assume the right to revise such discretion because of an inequality of benefits.

Some of the courts have felt authorized to interfere with the collection of taxes authorized by the legislature for a public purpose, in cases similar to this, upon the ground that such tax was illegal because in violation of that provision in the constitutions of

almost all of the states which forbids the taking of private property for public use without compensation to the owner.

That the constitutional provision referred to has reference solely to the taking of private property for public use, under the right of *eminent domain*, has been generally understood to be true.

"The right of taxation, and the right of eminent domain, rest substantially upon the same foundation. Private property may be constitutionally taken for public use in two ways, that is to say, by *taxation*, and by right of eminent domain. These are rights which the people collectively retain over the property of individuals, to resume such portions of it as may be necessary for public use. Compensation is made when private property is taken in either way. Money is property. Taxation takes it for public use; and the taxpayer receives, or is supposed to receive, his just compensation in the protection which government affords to his life, liberty and property, and in the increase of the value of his possessions, by the use to which the government applies the money raised by the tax." People *v.* Mayor of Brooklyn, 4 N. Y., 422; Cooley's Const. Lim., 498.

"Taxation operates upon a community, or upon a class of persons in a community, and by same rule of apportionment. The exercise of the right of *eminent domain* operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals." Potter's Dwarris, 403.

The petition does not set up a state of facts which amount to a taking under the right of *eminent domain*, in which a direct pecuniary compensation must be made, but a case of taxation for a public purpose, in which the compensation that the legislature has deemed sufficient to authorize the burden, consists in the benefits to the appellant and her property.

That all rural property contiguous to a city is increased in value by the increased prosperity and growth of the city to which it is contiguous, is common knowledge; and whether before such property can be incorporated as a part of a city, and be subjected to its burdens, it must be necessary by extension and growth that such property be needed to accommodate those who there seek urban homes; or whether, to subserve the public welfare, it may be so incorporated and taxed when its situation is such that it may derive benefit from the expenditure of money in the city, are questions which, from their nature, are political and not judicial in character, and must be decided by the legislature, whose decision must be final in reference to the incorporation of the property, as well as to whether the benefit to result from such incorporation and conti-

---

---

guity will be sufficient to authorize the imposition of a burden upon it for a proper corporate purpose.

If an act of the legislature be unconstitutional, the courts have the power to declare it void; but, as was well said by Justice Cooley in speaking of the right claimed by some of the courts of the states whose opinions are entitled to the highest respect, to control or modify legislation upon this subject, " it seems difficult to harmonize them with the conceded principles governing the law of taxation. For, 1. They do not question legislation as being in excess of legislative authority, as might be done where taxes are voted for a purpose not public; but they leave the legislation to stand, and only interfere to qualify its effect on the ground that it has been adopted on improper grounds, and will operate unequally.   2. This is done on an inquiry into the facts, and a substitution of the judicial conclusion for the legislative on a subject not at all judicial; a subject, too,— the proper limits of city extension,— upon which persons are certain to differ widely, and where an inquiry into the facts after the judicial method of examination of witnesses is usually much less satisfactory than that personal knowledge and investigation which legislatures are supposed to possess or to make." Cooley on Taxation, 120.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered November 10, 1882.]