JASON T. WOOD, Collector, *vs.* SMITH QUIMBY.

PROVIDENCE—APRIL 26, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

The Apponaug Fire District is a public or *quasi* municipal corporation, and; therefore, the manner of passing the act creating it was not in conflict with article IV, § 17, of the State constitution.

The fact that the charter provides that the district shall be subject to the provisions of chapter 152 of the Public Statutes, relating to private corporations, does not affect its corporate character.

Nor is its character affected by the fact that the property voters of the district formally accepted the charter; such proceeding was unnecessary, as the charter of a public, or *quasi* public, corporation is binding without acceptance.

The objection that the first meeting of the district was not called in accordance with § 4 of said chapter is sufficiently met by the facts that such compliance was impossible, and that the section was inapplicable to this corporation.

Section 1 of article II of the constitution of the State, defining the qualifications of voters, relates solely to the election of civil officers and to questions to be voted on in legally organized town or ward meetings; it does not include officers who may be elected in a *quasi* public corporation.

The term " civil officer " refers to municipal and State officers, and the assessors and collector of taxes of said fire district are not such officers as are contemplated in the constitutional provision.

It was competent for the General Assembly to provide that only property voters should be eligible to vote at the meetings of this corporation.

The fact that an individual tax-payer receives and can receive no direct benefit from a public improvement to be paid for and supported by a tax, a part of which is assessed upon his property, is not a test of the constitutionality of the act authorizing the tax.

The owner of such property may be legally called upon to pay a tax assessed upon it for *public* purposes.

The burdens of the State never have been and never can be distributed with absolute equality ; all that can be expected is that the system shall be as fair and equitable as it can be reasonably made.

The notice given by the assessors of taxes relative to the assessment of a tax is fatally defective if it does not require the tax-payers to bring in an account of their ratable estate.

ASSUMPSIT for the collection of a tax. Heard on agreed statement of facts, jury trial being waived.

TILLINGHAST, J. This is an action of assumpsit by the tax collector of the Apponaug Fire District to recover the amount of a tax assessed against the defendant, who is a resident and tax-payer of said district. The action was commenced in the District Court of the Fourth Judicial District, and has been certified to this court, jury trial waived.

The agreed statement of facts in the case is as follows:

"1. The declaration conforms to the law of this State prescribing the necessary averments, and the record of the assessors of the Apponaug Fire District for the year 1894 may be used in evidence.

2. The act creating the Apponaug Fire District was not continued over an election of members of the General Assembly, as provided by section 17 of article IV of the constitution of Rhode Island, and section 2 of chapter 19 of the Public Statutes in force when said act was passed.

3. The first meeting of the Apponaug Fire District was not called by a notice delivered or published in the manner prescribed by Public Statutes of Rhode Island, chapter 152, section 4, but was called by posting notices in three or more public places on April 30, 1892, and the meeting was held on May 9th following.

4. Before assessing the tax in question, the assessors posted up notices of the time and place of their meeting in three public places in said district, for three weeks next preceding the time of such meeting, and advertised said meeting in the Providence News on the 16th, 23d, and 30th days of

March, and on the 6th day of April, 1894. Said notices and advertisement were in words and figures following, viz.:

'The Assessors of the Apponaug Fire District will meet at the Fire Station, Apponaug, April 7th, 1894, at 10 o'clock A. M., for the purpose of assessing taxes on the property of said district.

> B. W. VAUGHAN
> ALBERT GREENE
> PHILETUS BENNETT.'

The Providence News is a daily newspaper printed in the city of Providence, and was circulated in said district by subscription and by newsdealers. There was a newspaper printed and circulated in said town of Warwick at this time, but no advertisement of the time and place of their meeting was inserted in said paper by the assessors. There was no newspaper printed in said district.

5. The court may take cognizance of all the acts creating fire districts which have been passed by the General Assembly of Rhode Island, and of the proceedings of the General Assembly thereon.

6. The certified copy of the charter and proceedings of the Apponaug Fire District, which was used by this court in the case of *Quimby* v. *Wood*[1] may be used in evidence in this case; and, should this case be taken to the Supreme Court of the United States, shall be considered a part of the record."

The following is a statement of the constitutional questions raised by the defendant in the case, viz.: The defendant claims—

First. That the charter of the Apponaug Fire District is invalid, because it was passed in disregard of article 4, section 17, of the constitution of Rhode Island, and of chapter 19, section 2, of the Public Statutes of Rhode Island.

Second. That section 4 of the charter of the Apponaug Fire District is invalid, because repugnant to article 7, section 1, of the amendments to the constitution of Rhode

---

[1] See 19 R. I. 571.

Island; and, therefore, the election of both the tax assessors and the tax collector of said Apponaug Fire District was void, and that the acts of the persons assuming to act as such assessors and collector were invalid.

Third.   That the charter of the Apponaug Fire District, in so far as it authorizes the assessment of taxes upon the property of the defendant, is void, because in conflict with article 1, section 16 of the constitution of Rhode Island— the property of the defendant being in no manner benefited by the fire district, and the fire district tax as to the defendant being, therefore, a taking of private property for public uses without a just compensation.

Fourth.   That, in so far as the charter of the Apponaug Fire District and the laws of the State of Rhode Island authorize the assessment and collection of a fire district tax without notice of such assessment to the defendant, or an opportunity for a hearing thereon, said charter and laws are in conflict with article 1, section 16, of the constitution of Rhode Island, and also with the fourteenth amendment to the constitution of the United States.

We will first consider the constitutional questions.

Article IV, § 17, of our State constitution provides that: "Hereafter, when any bill shall be presented to either house of the general assembly, to create a corporation for any other than for religious, literary, or charitable purposes or for a military or fire company, it shall be continued until another election of members of the general assembly shall have taken place, and such public notice of the pendency thereof shall be given as may be required by law."

If the charter in question falls within the meaning of the word "corporation" as used in said section exclusive of the exceptions thereto, then it was not enacted in accordance with the provision and is unconstitutional.   We are clearly of the opinion, however, that the corporation in question does not fall within the class described in said section 17, but that it is a public or *quasi* municipal corporation, and hence that it was competent for the General Assembly to create the same without any reference to said section.

The question whether such a corporation is a public or private corporation was fully considered by this court in *Cole* v. *Fire Engine Co.*, 12 R. I. 202, and it was there held that it was a public or *quasi* public corporation; and as we fully agree with the decision in that case, there is no occasion to further consider the question. *Sherman* v. *Binford*, 10 R. I. 559, and *State* v. *District of Narragansett*, 16 R. I. 424, are also authorities in support of our position in this matter.

But the defendant contends that the charter of the Apponaug Fire District contains provisions radically different from those of the District of Narragansett, and some of which are intelligible only on the hypothesis that it is not a public corporation; and he refers particularly to section 1 of the charter, which provides that the district shall be subject to the provisions of chapter 152 of the Public Statutes which, he says, is beyond question a chapter relating to private corporations. It is doubtless true that said chapter mainly has to do with private corporations, and, as said by Durfee, C. J., in *State* v. *District of Narragansett*, *supra*, "seems to be intended only for such corporations." But, admitting this to be so, how does that affect the question at issue. Here is a fire district. It is not and was not intended to be a business corporation. It has no capital stock; it makes no returns, and it holds no property except for public purposes. It is simply authorized to exercise, and is exercising, a part of the sovereign power of the State, and is therefore a governmental or political body; and the mere fact that it is made subject to the provisions of a statute which, for the most part at least, are not applicable to it, does not have the effect to change its essential character and make it a private corporation. But there are provisions in said chapter 152 which are of general applicability to said charter; and while perhaps it was not necessary for the General Assembly to make it subject thereto in terms, yet the fact that it did so in no way affects the character thereof. It is proper to state in this connection that this is by no means the only charter of its kind which is made subject to the provisions of said

chapter 152. The Union Fire District of South Kingstown, created in 1883; the Pascoag Fire District, created in 1887; the River Point Fire District, created in 1888; the Warwick Fire District, created in 1889; the Crompton Fire District, created in 1889; the Coventry Fire District, created in 1889; the East Providence Fire District, created in 1891, and some others, are each expressly made subject to the provisions of said chapter 152.

Defendant further contends that there is another circumstance which strongly tends to show that the Apponaug Fire District was not understood to be a public corporation, namely, that the charter was *accepted* in the most solemn and formal way by the property voters of the district at a meeting called for that especial purpose. As this act of acceptance, however, was wholly unnecessary, the charter of a public or *quasi* public corporation being binding without acceptance (*Berlin* v. *Gorham*, 34 N. H. 266), of course no one will contend that it had any effect whatever upon the character of the charter in question, or that the fact that the tax-paying inhabitants *understood* it to be a private corporation can make any difference.

The second constitutional question raised is as to section 4 of the charter, which provides as follows:

"Said taxable inhabitants at each annual meeting, and at any other meetings when vacancies may occur, may elect officers to serve for one year or until the next annual meeting and others be chosen in their stead, which officers shall consist of a moderator, clerk, treasurer, three assessors, and a collector of taxes, whose duties and powers within said district shall be such as like officers of towns in this State have in their respective towns; they may also elect firewards, and any other needed officers and committees, with such powers as they may designate."

The defendant contends that if the district is a public corporation, then this section is in conflict with article VII, section 1, of the amendments of the constitution of the State, and hence that the election of assessors and a collector

of taxes, held in pursuance thereof, was void. Said section is as follows:

"Every male citizen of the United States of the age of twenty-one years, who has had his residence and home in this State for two years, and in the town or city in which he may offer to vote six months next preceding the time of his voting, and whose name shall be registered in the town or city where he resides on or before the last day of December, in the next year preceding the time of his voting, shall have a right to vote in the election of all civil officers and on all questions in all legally organized town or ward meetings: *Provided*, that no person shall at any time be allowed to vote in the election of the city council of any city, or upon any proposition to impose a tax or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars."

We do not think this provision has any relation to a *quasi* public corporation. It relates in terms solely to the election of civil officers, and to other questions which may be voted on in "*legally organized town or ward meetings*," and we do not think it ought to be or can be properly extended by construction to include any officers who may be elected in a *quasi* public corporation. The term "civil officers" primarily, if not solely, has reference to municipal and State officers, and we think it may well be doubted whether any of the officers provided for in said charter are "civil officers" within the legal signification of the term. See *State* v. *Crawford*, 17 R. I. 292; Mechem on Public Officers, § 24. But, even admitting that the assessors and collector of said district are civil officers, they are clearly not such as are contemplated in the constitutional provision now under discussion; and this being so, it was perfectly competent for the General Assembly to provide that only the inhabitants of said district qualified to vote in town affairs on a proposition to impose a tax or for the expenditure of money should be eligible to vote and act at the meetings of the corporation.

The third constitutional question raised is that relating to

article 1, § 16, which provides that private property shall not be taken for public uses without just compensation. The contention of the defendant under this provision is that the charter of said district, in so far as it authorizes an assessment on his land, is void because said land is so situated that no benefit can accrue to him from the maintenance of the fire apparatus of the district as now established.

The evidence submitted shows that defendant is the owner of a lot of land comprising about seven and one-half acres, with a house, barn, and other buildings thereon, situate in said district, and that the nearest hydrant to his premises which has thus far been erected is about 4,000 feet distant therefrom. The evidence shows that quite a large tract of land in said district, and in the neighborhood of defendant's land, is platted into house lots and is being gradually built upon, some of which land, together with at least one dwelling-house, is farther from the water supply than defendant's land. The argument in behalf of the defendant is that the act of incorporation, in so far as it authorized a tax to be levied on his property, was an arbitrary proceeding on the part of the legislature for which no public reason can be given—an attempt under the guise of taxation to take private property for public uses without a just compensation—and, therefore, a violation of the last-named constitutional provision.

We fail to see that there was any arbitrary or unusual exercise of legislative power in connection with the passage of the charter in question. See *State* v. *Brown & Sharpe Mfg. Co.*, 18 R. I., at pages 35-6. The act is very similar to many others which have been passed by the general assembly for the incorporation of fire districts and is clearly one which was competent for that body to enact. The tax which the act authorizes is evidently for a public purpose only, viz., for the protection of the inhabitants and property of said district from fires, and it is limited to the taxable inhabitants thereof. It is true the evidence shows that the defendant is so situated that no direct benefit can now accrue to him from the fire apparatus of the district—that is, the

pipes and hydrants—in case of fire on his premises. But this is not the test by which the constitutionality of the act can be determined; for instances are numerous in which the individual tax-payer receives and can receive no direct benefit from the public improvement or institution to be paid for and supported by the tax, and yet he is called upon, and undoubtedly legally called upon, to contribute towards the expense of erecting and maintaining the same. A tax for the support of the poor of a town, for instance, probably is one from which very few of the tax-payers thereof receive any direct benefit, and yet it will hardly be claimed that it is unconstitutional. A tax for the support of public schools is one from which only a part of the tax-payers receives any direct benefit, for the reason that only a part thereof have children to be educated therein, and some of those who have children prefer to educate them in private schools. But can it be for a moment contended that because a tax-payer has no children to be educated a tax upon his property for the support of public schools is unconstitutional? Take another illustration. A man owns unimproved land in a fire district, upon which he is taxed for the purpose of constructing and supporting a fire department. He owns no buildings and gets no direct benefit from the fire department. But could it be successfully argued that for this reason he would not legally be taxable for the expense of such a public improvement? Certainly not. The purposes for which taxes are imposed in the foregoing instances, and in others which might be cited, are *public* purposes, " in which the whole community have an interest, and for which by common consent property owners everywhere in this country are taxed." See *Kelly* v. *Pittsburgh*, 104 U. S. 81. Again, as said by Durfee, C. J., in *Cleveland* v. *Tripp*, 13 R. I. 50 (61), " The propriety of any given tax and the modes in which it shall be apportioned and assessed are legislative matters with which the courts will not interfere unless the legislature has *palpably* transgressed some limitation of the constitution."

Again, the mere fact that the hydrants and fire apparatus connected therewith are not now available to the defendant

in case of fire is no sufficient reason for holding the tax
assessed against him to be illegal, because from the very
nature of things it is impossible to extend the pipes to all
parts of the district at once.   The more compact and thickly
settled part thereof naturally and properly receives the first
attention of the corporation, and gradually the outlying por-
tions are afterwards reached and supplied.   It is apparent from
the testimony that said district is a growing community, and
that at no distant day the pipes will be extended so as to
reach most, if not all, of the dwellings therein.   But, even
admitting that the defendant can never avail himself of any
direct benefit from said works, yet, for the reasons above
given, this court has no power to declare said act unconstitu-
tional as to him.   The burdens of the State never have been,
and never can be, distributed with absolute equality and fair-
ness amongst the citizens thereof.   Some taxes will bear a
very unjust relation to the benefits received, while others
will bear a very fair relation thereto; but this is doubtless
owing in a very large degree to the necessary imperfections
incident to every system of taxation which has yet been de-
vised; and all that can be reasonably expected is that the
greatest good of the greatest number will be secured by the
system adopted, or, in other words, that the system shall be
as fair and equitable as it can reasonably be made.

In *Norris* v. *City of Waco*, 57 Tex. 635, it was held that
taxes are "equal and uniform," within the meaning of the
constitution of that State, when no person or class of persons
in the territory taxed is taxed at a higher rate than are other
persons in the same district upon the same value or thing,
and when the objects of taxation are the same by whomso-
ever owned or whatsoever they be.

In Cooley on Taxation, 2 ed. p. 164, the learned author
says : "There is no imperative requirement that taxation
shall be equal.   If there was, the operations of government
must come to a stop, from the absolute impossibility of
fulfilling it.   The most casual attention to the nature and
operation of taxes will put this beyond question.   No single
tax can be apportioned so as to be exactly just, and any com-

bination of taxes is likely in individual cases to increase instead of diminish the inequality. Theoretically, tax laws should be framed with a view to apportioning the burdens of government so that each person enjoying government protection shall be required to contribute so much as is his reasonable proportion, and no more. The tax law that comes nearest to accomplishing this is, in theory, the most perfect." See also *In Re Dorrance Street*, 4 R. I. 230 (249).

We are aware that there is some conflict of authority upon the general question now under consideration, and that the cases cited by defendant's counsel, viz. : *City of Covington* v. *Southgate*, 15 B. Mon. Ky. 491; *Morford* v. *Unger*, 8 Ia. 82 ; *Bradshaw* v. *City of Omaha*, 1 Neb. 16, and perhaps a few others, seem at first blush to furnish some support for the defendant's position. A careful examination of said cases, however, shows that the taxing power of the States in which the decisions were rendered was certainly carried to its extreme length, if not arbitrarily overstepped in the passage of the various acts in question. Thus in *Bradshaw* v. *City of Omaha* a statute extended the limits of the defendant city so that a farm, a mile distant from any land used as town lots, was included within and taxed by the city, and for the confessed purpose, as admitted by the demurrer, of lightening the burdens of taxation upon the people living within the city proper. The court held that *under the general provision of the constitution of that State* the exercise of the taxing power, when unjustly exercised, may be restrained. The case was very different from the one before us, but, in the general principles enunciated, is practically in harmony with the position which we have here taken. Without further reviewing the cases cited by the defendant, we will content ourselves by saying that, even conceding that they sustain his position, then the decided weight of judicial authority is to the contrary. We therefore decide that the charter in question is not in conflict with article 1, § 16, of the constitution of this State.

The fourth and last of the constitutional questions hereinbefore enumerated we find it unnecessary to consider, for the

reason that we think the notice which was given of the assessment of the tax in question was not given as required by the charter, and hence that the assessment was void. By section 4 of the charter it is provided that the duties and powers of the assessors, within the district, shall be such as like officers of towns in this State have in their respective towns. By section 5 it. is provided that taxes shall be assessed according to the last town valuation, adding; however, any taxable property omitted by the town assessors or afterwards acquired. And that where the town assessors have included property within the district and property without the district in one valuation, the district assessors shall make an equitable valuation of the portion within the district. "And in the assessing and collecting of said taxes, such proceedings shall be had by the officers of said district *as near as may be*, as are had by the corresponding officers of towns in assessing and collecting town taxes, other than is hereinbefore provided."

Town assessors, before assessing a tax, are required to give notice of the time and place of their meeting, the notice to require every person liable to taxation to bring in to the assessors a true and exact account of all his ratable estate (Pub. Stat. R. I. cap. 43, § 6); and in *McTwiggan* v. *Hunter*, 18 R. I. 776, it was held that, in order to give validity to an assessment, the statutory requirement as to notice is to be regarded as mandatory. See also *Peckham* v. *Bicknell*, 11 R. I. 596; Cooley on Taxation, *supra*, 364.

We think the notice given by the assessors (see agreed facts, *supra*) was fatally defective in not notifying the taxpayers to bring in an account of their ratable estate. Moreover, there is good reason for the giving of such notice as the statute requires. The town assessors may have accidentally omitted to include in their assessment all of the property liable to taxation in said district, and it is quite probable that between the time of the town assessment and that of the district, which in a given case might be nearly or quite a year, additional property to a considerable amount might be acquired therein. See *McAdam* v. *Honey*, 20 R. I. 351;

and tax-payers owning property might also have disposed thereof, which would render it necessary to reduce or change the assessment as to them. Those tax-payers also whose real estate lies partly within and partly without the district are entitled to notice, in order that they may be properly heard as to the equitable valuation of that portion lying within the district.

As to the objection based on paragraph 3 of the agreed facts, viz., that the first meeting of the district was not called in accordance with the requirement of Pub. Stat. R. I. cap. 152, § 4, and hence that the district never became a corporation *de jure*, it is enough to reply (1) that compliance with said section 4 was impossible, and (2) that the section is clearly inapplicable. Said section provides as follows:

"The first meeting of all corporations, except of banks, shall, unless otherwise provided for in their acts of incorporation, be called by a notice signed by any one or more of the persons named in the act of incorporation and setting forth the time, place, and objects of the meeting, and such notice shall, seven days at least before the meeting, be delivered to each member or published in some newspaper of the county where the corporation may be established, or, if there be no newspaper in the county, then in some newspaper of an adjoining county: *Provided*, that notice of the first meeting of incorporated religious societies may be affixed to the door or some other conspicuous part of their meeting-house or usual place of assembling for religious purposes."

In the first place, no person is named as a corporator in the charter in question, and hence it was impossible to issue the notice required by said section; and in the second place, even if such notice could have been issued, there were no "members" of the corporation, within the meaning of said section 4, to serve it upon. Moreover, the act was passed April 29, 1892, and it provided that the first meeting should be holden on the second Monday thereafter, which was but nine days distant, and section 5 of the act provides a method for giving notice of the calling of meetings by giving *seven* days notice, which was done in regard to the meeting for or-

ganization.   We think this was clearly sufficient, the charter itself providing in effect for the notice to be given of the first, as well as of subsequent meetings to be held thereunder. While, therefore, we sustain the constitutionality of the charter, and also the legality of the organization of the district thereunder, we are obliged to hold that. by reason of the insufficiency of said notice regarding the assessment, the tax in question is void and uncollectible.

Judgment for the defendant for his costs.

*Dexter B. Potter,* for plaintiff.

*Stephen O. Edwards, Walter F. Angell, Seeber Edwards, and Albert Gerald,* for defendant.