[Civ. No. 9995. First Appellate District, Division Two.—January 15, 1936.]

MIDWICK COUNTRY CLUB (a Corporation), Appellant, v. THE COUNTY OF LOS ANGELES, Respondent.

Meserve & Meserve, Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellant.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondent.

SPENCE, J.—Plaintiff brought this action to recover taxes paid to defendant under protest which taxes were levied for the benefit of the Belvedere Fire Protection District organized under Statutes 1923, chapter 191. Judgment was entered in favor of defendant and from said judgment, plaintiff appeals. Plaintiff states that the gist of the complaint is to the effect "that no benefit is or could be derived by the inclusion of its property in the Belvedere Fire Protection District". The main allegation on this subject was as follows: "That plaintiff further alleges that the lands, and improvements thereon, of this plaintiff . . . were so far removed and distant from the section or country known as Belvedere and so isolated that this plaintiff could not in any way be benefited by the incorporation or organization of such district, nor could it receive fire protection from such district." The trial court found that said lands and improvements "were not so

far removed or distant from the section or country known as Belvedere, nor were they so isolated that plaintiff could not be benefited by the incorporation or organization of such district; and it is not true that plaintiff could not receive fire protection from such district''. The trial court affirmatively found that plaintiff's land and improvements were so located in the proximity of Belvedere ''as to be particularly and specially benefited by the organization and incorporation of such district and . . . as to be particularly and specially benefited by the fire protection afforded by such district''.

It is plaintiff's contention that the foregoing findings are not supported by the evidence but we find no merit in this contention. There was ample evidence to show that fires had occurred in said district, some of them on plaintiff's property, and that said district, including plaintiff's property, was in need of fire protection. The uncontradicted evidence showed that a test run was made with the fire apparatus from the firehouse in the populous section of Belvedere to plaintiff's property and that the time of said run including receipt of the telephone call was ''a fraction over four minutes''. We are of the opinion that such evidence alone was sufficient to sustain the findings contrary to the material allegations of plaintiff's complaint.

We may further state, however, that we believe that plaintiff's argument is based upon a misconception of the nature and functions of a fire protection district. Plaintiff proceeds upon the theory that because of the topography of the territory and the existence of a practically uninhabited area between plaintiff's property and the populous section of the unincorporated area known as Belvedere, plaintiff could receive no benefits from the organization of said district. Under section 5 of the so-called County Fire Protection District Act (Stats. 1923, chap. 191) the board of supervisors is empowered to do many things ''and to perform all other acts necessary or proper to accomplish the purposes of this act''. The obvious purpose of the act is to provide fire protection to all the property within the districts organized thereunder. It is a matter of common knowledge that menacing fires often spread through uninhabited areas of this state unless checked by fire trails or breaks and that the work of fire protection is not necessarily confined to providing the equipment, facilities and personnel for fighting such fires after such fires have

started their devastation. But even if the work of fire protection were so confined, we cannot assume that the board of supervisors would not use the taxes levied for the benefit of the fire protection district for the purpose of providing such fire-fighting equipment, facilities and personnel as might be required to afford adequate fire protection to all of the property within the district. How then can it be claimed, as alleged in the complaint, that "this plaintiff could not in any way be benefited by the incorporation or organization of such district, nor could it receive fire protection from said district"?

Plaintiff states that the complaint herein was drawn "so as to conform to the rules enunciated" in *Myles Salt Co.* v. *Board of Commrs. of Iberia etc. Drainage Dist.*, 239 U. S. 478 [36 Sup. Ct. 204, 60 L. Ed. 392]. Neither said case nor any other authority cited by plaintiff involved the organization of a fire protection district. Most of these authorities dealt with drainage district, flood control districts and the like. The case above cited was decided upon the sufficiency of the pleadings. It was there alleged that the organization of the drainage district was "of no benefit to plaintiff's land" and that the district was formed "only for the benefit of other lands". It was further alleged that "It was not intended nor has it ever been intended, nor was it possible nor is it possible, to give any of the benefits of the drainage scheme" to plaintiff's lands and that plaintiff's land "never can or will in the future receive any benefit whatever from the system". In its opinion, the United States Supreme Court said that these allegations should be taken as true and that "We are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property, but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind." It is wholly conceivable that proof might be made of such allegations in an action involving the propriety of including certain lands in a district such as a drainage district, but it is difficult to see how similar allegations could be proved with respect to a fire protection district. But even if we assume that there are circumstances under which similar allegations could be proved in an action involving a fire pro-

tection district, we believe it clear that the record in the present case is devoid of such proof. We conclude that the findings of the trial court upon the allegations of the complaint above set forth were amply supported by the evidence. In view of this conclusion, it is unnecessary to discuss defendant's contention that the findings of the board of supervisors regarding benefits were conclusive and defendant's further contention that plaintiff was barred from raising the question of benefits because of its failure to protest upon the hearing before the board of supervisors.

■ Plaintiff further contends that "The notice required by the Fire Protection District Act was not properly published", but we believe this contention is likewise without merit. At the time in question, section 2 of the act provided as follows: "Thereupon said board of supervisors shall fix a time and place for a hearing of the matter of the formation of such county fire protection district and shall direct the clerk of said board to publish a notice once a week for two successive weeks in the newspaper circulated in the territory which it is proposed to organize into a fire protection district which said board deems most likely to give notice to the inhabitants thereof of the proposed formation of such district." No newspaper was published in the proposed territory and the board directed that the notice be published in the "Heights News", a newspaper printed and published in the city of Los Angeles and circulated in the proposed territory. It appears to be plaintiff's contention that publication should have been made in a newspaper of general circulation within the meaning of sections 4458, 4459, 4460, 4462 and 4463 of the Political Code and that the "Heights News" was not such a paper. While we believe that the evidence showed said "Heights News" was a newspaper of general circulation for the purpose of said publication, it is unnecessary to discuss this question as the act did not call for publication in a newspaper of general circulation within the meaning of the above-mentioned sections. The act contained a special provision regarding publication and as the publication was made in full compliance with the requirements of the act, it was sufficient. (*Palos Verdes Library District* v. *McClellan*, 97 Cal. App. 769 [276 Pac. 600].)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.