692 P.2d 1019

**CALIFORNIA PORTLAND CEMENT COMPANY, a California corporation, Plaintiff/Appellee,**

v.

**The PICTURE ROCKS FIRE DISTRICT, an unincorporated association; the District Board of the Picture Rocks Fire District and Its Members, David Capen, Michael De Spain, Laura Kruger, Will Talbort, and Frank Chernis, Defendants/Appellants.**

**No. 2 CA–CIV 5117.**

Court of Appeals of Arizona, Division 2.

Sept. 20, 1984.

Review Denied Dec. 4, 1984.

Bilby & Shoenhair, P.C. by Mary E. Mangotich, Tucson, for plaintiff/appellee.

John R. Moffitt, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

In this appeal the fire district contends the trial court erred in voiding its annexation of the area in which appellee's plant is located and in ordering it to refund taxes collected from appellee in the sum of $164,410.99 for the year 1982 and $147,883.48 for taxes collected for 1981. Since we find the trial court based its decision upon two false conclusions of law, we agree and reverse.

The fire district was organized in 1977 pursuant to A.R.S. § 9–1001. A portion of appellee's Rillito plant property was included within the boundaries of the district at that time. In 1978 the fire district adopted a budget of $40,320. The real property taxes levied for the fire district on that portion of the Rillito plant property which was then located in the district was $4,462, a sum which increased appellee's total 1978 real property tax bill of $1,528,933 by approximately 0.29 per cent.

On September 7, 1980, the board of directors of the fire district voted to annex additional territory into the geographical boundaries of the fire district, which territory included a substantial additional portion of appellee's Rillito plant property. The minutes of the March 2, 1980, meeting of the fire district report that the cement plant was to be annexed before the next budget and do not report any discussion about the need for fire protection in the area annexed, nor do they report any discussion of annexation of property other than the cement plant and the town of Rillito.

The area which was to be annexed was sparsely populated but was contiguous to the existing fire district boundaries. The seven persons who signed the petition all resided on five residential lots immediately adjacent to the southernmost tip of the cement plant parcels but in excess of one-half mile from the fire district boundary. Appellee received no notice from the fire district of the proposed annexation and since appellee is not a "qualified elector," it had no opportunity to either vote or protest the annexation of its property by the fire district.

In August 1981 the fire district submitted to the Pima County Board of Supervisors its first post-annexation budget. The 1980 budget of $97,715 was more than doubled in the 1981 budget of $213,134. The board of supervisors then levied a tax on all real property within the territory of the fire district including the cement plant parcels. The levy upon the cement plant parcels increased the Pima County real property taxes payable by appellee in 1981 by the sum of $147,883.48, which increased appellee's total 1981 Pima County real property tax bill of $1,708,653 by 8.7 per cent. The taxes collected from appellee represented over 60 per cent of the fire district's total budget in 1981. Appellee paid its 1981 real property taxes under protest and filed a petition to withdraw from the fire district. On March 21, 1982, the fire district heard the evidence in support of appellee's application to withdraw.

The evidence introduced at the hearing on appellee's petition to withdraw from the fire district established that appellee had received and could receive no benefit from inclusion within the district. A former chief of several fire departments testified that the fire experience of the cement industry generally and of appellee particularly was excellent. He also testified that the cement plant was constructed of non-flammable fire resistant materials which were unlikely to burn. He told the board that the resources of the fire district were inadequate to suppress or control a fire at the cement plant. He also maintained that the nature of the fire district as a volunteer fire company, the distance of the headquarters of the fire district and of its members from the plant, and the specialized nature of the manufacturing process employed at the plant all indicated that the fire district would not be able to prevent a loss of property at the plant due to fire. He also testified that appellee's property offered no fire hazard whatsoever to other property within the territory of the fire district.

The fire district presented no evidence in opposition to appellee's application. Nevertheless, it denied the petition to withdraw.

In 1982 the fire district increased its budget to $256,124. Appellee's contribution to that budget totaled $164,410, again more than 60 per cent of the total budget. Those taxes were also paid under protest.

Evidence similar to that introduced before the fire district was introduced in the trial of this action. Appellee not only introduced evidence that it would not receive any benefit from its inclusion within the territory of the fire district, but also that it could obtain similar services from a Rural Metro fire station for $7,323 per year.

The trial court made findings of fact which included, inter alia, a finding that the property of appellee did not constitute a fire hazard and that appellee would receive no benefit from its inclusion within the fire district. The court also found that although the fire district offered emergency medical service, appellee could obtain fire and emergency medical service from a private contractor at the approximate cost of $7,323 per year.

In its conclusions of law the trial court found that appellee, in the proceedings to withdraw from the fire district, failed to meet the requirements of A.R.S. § 9–1007(A) and therefore, was not entitled to withdraw from the district; that volunteer fire districts are more like special improvement or assessment districts than traditional municipal corporations and that as improvement districts they must offer significant special benefits to persons or property included within their boundaries beyond the benefits offered to the general public; that if there is no significant benefit derived, the levying and collecting of a tax for the protection of a specific property in the district was, as to that property, unreasonable, arbitrary and confiscatory; that any assessment by a fire district must not be in excess of the proportional benefits received by the property as compared to other properties affected; that the benefit to the property must at least equal the assessment or tax; and that appellee's property,

after annexation, was not benefitted to any extent approaching the amount of taxes levied and collected annually for the fire district. The trial court also concluded that the annexation was void because the property of the persons who signed the petition was not contiguous to the existing fire district.

As we previously stated, the trial court went astray on two conclusions of law. The first error was to conclude that the annexation was void because the persons who signed the petition did not reside on land contiguous to the existing fire district. The second error was to conclude that the fire district was a quasi improvement district and therefore appellee's property had to receive some special benefit before it could be validly assessed any fire district taxes.

### THE ANNEXATION

Procedures for annexing territory in a fire district are governed by A.R.S. § 9–1006.01. Subparagraph A states:

"When the qualified electors of an unincorporated area contiguous to a fire district administered by a district board desire their territory to be annexed by such district, they shall present to the chairman of such board a written petition, signed by at least fifty-one per cent of the qualified electors in the territory proposed to be annexed...."

Although the territory proposed to be annexed was contiguous to the fire district, the trial court found that since the persons who signed the petition did not live on land contiguous to the fire district, the petition was invalid and the annexation was void ab initio. This conclusion is patently erroneous. Persons who can validly sign the petition need not even be landowners. They need only be qualified electors, residing within the proposed boundaries as defined in A.R.S. § 16–121 which states:

"A person whose name appears on the register for the last preceding general election and whose registration has not been subsequently cancelled, or a person

who has registered under a subsequent registration or changed his registration pursuant to § 16–135, 16–136 or 16–137, shall, if he is eighteen years of age and has been a resident of the state fifty days, be deemed a qualified elector for any purpose for which such qualification is required by law, except as provided in § 16–126 and 16–127." [1]

The key requirement of § 9–1006.01(A) is contiguity. The district must be a self-contained area and not one comprised of two or more non-contiguous areas. Since the petition here was signed by at least fifty-one per cent of the qualified electors of the territory of an unincorporated area contiguous to the fire district, the petition was valid and when it was approved by the board of the fire district, the annexation effectively included appellee's property.

## THE NATURE OF A FIRE DISTRICT

■ The trial court found that the fire district was a "quasi improvement district" and as such could tax appellee's land only in an amount equal to the benefits that the land received. We find this characterization to be erroneous. While it is well accepted that the authority of a special improvement district to make assessments against property within its territory is restricted by the requirement that the district provide some meaningful benefit to the property assessed, see *Home Builders Association of Central Arizona v. Riddel*, 109 Ariz. 404, 510 P.2d 376 (1973), and *Myles Salt Company v. Iberia Drainage District*, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392 (1915), such is not the case with a fire district. A fire district is a quasi municipal corporation. *Wood v. Quimby*, 20 R.I. 482, 40 A. 161 (1898); *Seaver v. Inhabitants of Onset Fire District*, 282 Mass. 209, 184 N.E. 668 (1933); *Midwick Country Club v. Los Angeles County*, 11 Cal. App.2d 217, 53 P.2d 1006 (1936); *Larkin v. Bontatibus*, 145 Conn. 570, 145 A.2d 133 (1958); *Alarm Applications Company v. Simsbury Volunteer Fire Company*, 179 Conn. 541, 427 A.2d 822 (1980). Unlike an improvement district, a fire district is not organized to benefit any particular piece of property. In fact, the tax is levied against both real and personal property. See A.R.S. § 9–1005.

■ Through our independent research we have found two cases involving fire districts in which the taxpayer raised exactly the same question that was raised here, to-wit, that the assessment on his property was void because no benefit could accrue to him from the maintenance of the fire district. In *Wood v. Quimby*, supra, the taxpayer contended that his property was too distant from the headquarters to receive any benefit and that therefore the tax constituted a taking of his property without just compensation and was unconstitutional. In rejecting this argument the court stated:

" * *. * The act is very similar to many others which have been passed by the general assembly for the incorporation of fire districts, and is clearly one which was competent for that body to enact. The tax which the act authorizes is evidently for a public purpose only, viz. for the protection of the inhabitants and property of said district from fires, and it is limited to the taxable inhabitants thereof. It is true, the evidence shows that the defendant is so situated that no direct benefit can now accrue to him from the fire apparatus of the district— that is, the pipes and hydrants—in case of fire on his premises. But this is not the test by which the constitutionality of the act can be determined, for instances are numerous in which the individual taxpayer receives and can receive no direct benefit from the public improvement or institution to be paid for and supported by the tax, and yet he is called upon, and undoubtedly legally called upon, to contribute towards the expense of erecting and maintaining the same. A tax for the support of the poor of a town, for instance, probably is one from which very few of the taxpayers thereof receive any direct benefit, and yet it will hardly be

---

1. See also A.R.S. § 9–1002(C).

claimed it is unconstitutional. A tax for the support of public schools is one from which only a part of the taxpayers receive any direct benefit, for the reason that only a part thereof have children to be educated therein, and some of those who have children prefer to educate them in private schools. But can it be for a moment contended that because a taxpayer has no children to be educated a tax upon his property for the support of public schools is unconstitutional? Take another illustration: A man owns unimproved land in a fire district, upon which he is taxed for the purpose of constructing and supporting a fire department. He owns no buildings, and gets no direct benefit from the fire department. But could it be successfully argued that for this reason he would not legally be taxable for the expense of such a public improvement? Certainly not. The purposes for which taxes are imposed in the foregoing instances, and in others which might be cited, are public purposes, 'in which the whole community have an interest, and for which, by common consent, property owners everywhere in the country are taxed.' " 40 A. at 164–65.

And in *Midwick Country Club v. Los Angeles County*, supra, the court rejected an argument that the taxpayer's land had to be particularly and specially benefited by the organization and incorporation of the fire district, stating:

"We may further state, however, that we believe that plaintiff's argument is based upon a misconception of the nature and functions of a fire protection district. Plaintiff proceeds upon the theory that because of the topography of the territory and the existence of a practically uninhabited area between plaintiff's property and the populous section of the unincorporated area known as Belvedere, plaintiff could receive no benefits from the organization of said district.... The obvious purpose of the act is to provide fire protection to all the property within the districts organized thereunder. It is a matter of common knowledge that men-

acing fires often spread through uninhabited areas of this state unless checked by fire trails or breaks, and that the work of fire protection is not necessarily confined to providing the equipment, facilities, and personnel for fighting such fires, after such fires have started their devastation. But, even if the work of fire protection were so confined, we cannot assume that the board of supervisors would not use the taxes levied for the benefit of the fire protection district for the purpose of providing such fire fighting equipment, facilities and personnel as might be required to afford adequate fire protection to all of the property within the district. How, then, can it be claimed, as alleged in the complaint, that 'this plaintiff could not in any way be benefited by the incorporation or organization of such district, nor could it receive fire protection from said district?'

Plaintiff states that the complaint herein was drawn 'so as to conform to the rules enunciated' in *Myles Salt Company v. Board of Commissioners of Iberia and St. Mary Drainage District*, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392. Neither said case nor any other authority cited by plaintiff involved the organization of a fire protection district. Most of these authorities dealt with drainage district [sic], flood control districts, and the like." 53 P.2d at 1007–08.

The trial court relied on the case of *South Trail Fire Control District, Sarasota County v. State of Florida*, 273 So.2d 380 (1973). We find this case to be inapposite since Florida had a statute which required that the assessment not be in excess of the proportional benefits received by the property owner as compared to other properties affected. We have no such statute.

Appellee relies on the case of *Public Service Company of Oklahoma v. Northwest Rogers County Fire Protection District*, 675 P.2d 134 (Okla.1983) for the proposition that a fire protection district is a quasi improvement district. In that case the court was trying to uphold the constitu-

tionality of a tax imposed by the fire district. It could do so only if the tax were a "special assessment." The district could impose a special assessment only if the project constituted a local improvement. The court stated that there was "no legal impediment" shown to prevent it from concluding that fire protection may be treated as a local improvement. It deemed fire protection districts similar to sewer improvement districts, stating that these entities do not render government services in a general sense nor may they exercise powers other than those necessary to conduct their specific mission for the affected land. The court then stated that because the act authorized fire protection to be established exclusively and specifically for the benefit of property within a geographic area, the project constituted a local improvement. We are not persuaded by the reasoning of the Oklahoma court. Fire protection is not only for the benefit of property but for the benefit of people. Equating it with improvement districts and requiring a showing of special benefits makes no sense. The fire district taxes are no more invalid nor unconstitutional than the large amount of school district taxes which appellee pays annually ($870,996.90 in 1981.) This brings us to two cross-issues raised by appellee.

### APPELLEE'S ATTEMPT TO WITHDRAW FROM THE FIRE DISTRICT

■ Appellee contends the trial court erred when it ruled that the fire district board did not abuse its discretion when it denied appellee's petition to withdraw from the fire district. We do not agree.

A.R.S. § 9–1007.01(A) states:

"When the owner of land within the territory of a fire district organized and established under the provisions of this article believes that changes and conditions occurring since the date of its organization and establishment have rendered the continued inclusion of his land within the territory of the fire district unnecessary or improper, that his land offers no fire hazard whatsoever to any other property within the limits of the territory, and that the continued inclusion of such land within the limits of the territory will be as to him arbitrary, unreasonable, discriminatory and confiscatory to a substantial degree, the owner, if he desires relief therefrom, shall present to the chairman of the district a petition for exclusion of such land from the territory of the fire district."

The statute then provides for a hearing and further provides that if the board determines that the fire district will, in any reasonable manner, be adversely affected by granting the petition, that the petition be denied.

The trial court found that there were no changes in conditions which would authorize the granting of the petition. We agree. Appellee argues that the change in conditions is the increase in its tax bill. This is clearly a "boot strap" argument and is not the type of change envisioned by the statute. The statute speaks of dangers and conditions which have "... rendered continued inclusion of his lands within a territory of the fire district unnecessary or improper...." An increase in the tax bill does not render the inclusion of the property unnecessary or improper.

### MOTIVE FOR ANNEXATION

■ Appellee contends that the annexation was an unconstitutional taking of its property because the sole purpose of the fire district in the annexation was to increase the fire district's tax revenues without increasing the demand for its services. Some cases have held that annexations effectuated solely for the purpose of acquiring revenue may be declared void by the courts. *Winter Park v. State,* 119 Fla. 343, 161 So. 386 (1935); *Evans v. Council Bluffs,* 65 Iowa 238, 21 N.W. 584 (1884); *Portland General Electric Company v. Estacada,* 194 Ore. 145, 241 P.2d 1129 (1952). See *Mount Pleasant v. Beckwith,* 100 U.S. 514, 25 L.Ed. 699 (1880); *Masonic Widows and Orphans Home and Infirmary v. Louisville,* 309 Ky. 532, 217 S.W.2d 815 (1948). However, that is not the law in

Arizona. Where an annexation is otherwise valid, the motives of the governing body in annexing the territory may not be subjected to judicial inquiry. *State v. Phoenix*, 74 Ariz. 46, 243 P.2d 766 (1952). An appellate court will not determine whether an annexation is politically or economically justifiable. *Udall v. Severn*, 52 Ariz. 65, 79 P.2d 347 (1938). The inclusion or exclusion of territory within municipal boundaries is considered a discretionary function of the governing body. *Tucson v. Garrett*, 77 Ariz. 73, 267 P.2d 717 (1954).

The United States Supreme Court in *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907) held that the annexation of territory by political subdivisions of the state does not present a justiciable matter under the Fourteenth Amendment. The Hunter case is still viable. In *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) the Supreme Court noted the Hunter case and remarked on the extraordinarily wide latitude the states have in creating various types of political subdivisions and conferring authority upon them. The State of Texas has continually rejected the notion that an appellate court can look at the motive of a municipal corporation and its annexation policies. See *Superior Oil Company v. The City of Port Arthur*, 628 S.W.2d 94 (Tex.App.1982).

Arizona law wisely precludes inspection of motives by the appellate court and we shall not do so.

## LACK OF PROCEDURAL DUE PROCESS

 Appellee contends that A.R.S. § 9–1006.01 is unconstitutional because it does not require property owners to receive notice of the proposed inclusion of their property within the fire district and an opportunity to be heard before the property is included and taxed. We disagree. The decision to annex an area is a political-legislative decision. There is no constitutional requirement that affected landowners be notified before passage of an annexation ordinance and a failure to give such notice is not a denial of due process of law. *Holden v. City of Tecumseh*, 188 Neb. 117, 195 N.W.2d 225 (1972). The issue was raised in the case of *Swift v. City of Phoenix*, 90 Ariz. 331, 367 P.2d 791 (1961). There the court held:

"The appellants also contend that the action of the city in holding said petitions and its failure to give notice is a denial of due process; that persons who may have decided to protest were not given an opportunity to do so and that this violates the constitution of both the United States and the State of Arizona. Appellants cite no specific authority for this position. The general rule of law is that a city must only give that notice which is required of it by statute. 62 C.J.S. Municipal Corporations § 55, p. 157; cf. *City of Tucson v. Garrett*, 77 Ariz. 73, 267 P.2d 717, 719; A.R.S. § 9–471 (1956), requires no additional notice. This Court previously stated in *City of Tucson v. Garrett*, supra, 'The extent of the right of municipalities to enlarge their boundaries is dependent entirely on the legislature and its power in that respect is plenary in the absence of constitutional limitations, and there are none affecting the problem herein. The legislature may give to municipalities the power to annex territory upon any condition it chooses to impose, either with or without the wishes of the inhabitants of the territory involved, either with or without notice to anyone, with or without the right of objecting inhabitants to protest.' When a requisite petition has been filed, without doubt the statute gives the city council the entire discretion as to whether the request therein shall be granted."

The statute here gives the fire district board full discretion as to whether the request shall be granted and there was no constitutional requirement that notice be given.

The judgment of the trial court is reversed and remanded with directions to enter judgment in favor of appellants.

BIRDSALL, C.J., and HATHAWAY, J., concur.