JAMES KETTLE v. CITY OF DALLAS.

Decided April 27, 1904.

City Charter—Street Improvements—Improvement Districts—Tax—Homestead.

The amendment to the charter of the city of Dallas authorizing the creation of improvement districts by the city council and the levy of a tax against property owners in such improvement districts to meet expenses of improving streets was constitutional, and a tax was valid which was levied to pay for street paving though the property taxed was used as a homestead.

Appeal from the District Court of Dallas. Tried below before Hon. Richard Morgan.

*A. B. Flanary*, for appellant.

*W. T. Henry* and *Moroney & Simpson*, for appellee.

NEILL, ASSOCIATE JUSTICE.—The Twenty-seventh Legislature, by an amendment of the charter of the city of Dallas, authorized the creation, within its corporate limits, of improvement districts by its common council. By the act it is provided that "whenever the city council shall deem it necessary to grade, raise, repair, macadamize, remacadamize, pave, repave or otherwise improve any avenue, street or alley or portion thereof, * * * and shall be of the opinion that certain real estate abutting or in the vicinity of such proposed improvements will be specially benefited thereby, and shall deem it just for the owner or owners of such real estate so specially benefited to pay the cost of such proposed improvement or improvements, or a portion of such costs, the city council shall by resolution so declare, such resolution to define the limits within which all real estate will be so specially benefited by such proposed improvements," and that "all real estate within such limits may be finally established as hereinafter provided, shall be known as improvement districts, and, when so established, shall be designated by a certain number."

That "an improvement district shall include all such *real estate* as in the opinion of the city council will be specially benefited by such proposed improvement and improvements in proportion to its value, and to an amount at least as great as its pro rata of the costs of such proposed improvements, or so much of such cost as shall be paid solely by the owners of the real estate within such improvement district."

That "such resolution of the city council, hereinbefore provided for, shall also specify the general nature and character of the proposed improvement or improvements and shall direct the city engineer to prepare and submit to the city council an estimate of the costs of the same."

That "such resolution of the city council, hereinbefore provided for, shall direct the city tax assessor to report in writing to the city council the total assessed value of all the real estate within such improvement

district, according to the last annual assessment. In case the records of the city tax assessor do not show the assessed value of all real estate within such improvement district, the city tax assessor shall estimate the actual value of said real estate within such improvement district whose assessed value is not separately shown by his records, and shall include such estimated value in his report hereinbefore provided for."

That "the reports of the city engineer and the tax assessor hereinbefore provided for shall be advisory only, their purpose being to furnish the city council with information that will aid the city council in finally determining whether or not such proposed improvements shall be made, and how and by whom the costs of the same shall be paid; and no errors or omissions, in such reports, or either of them, shall vitiate any of the proceedings of the city council, or any proceedings that may be had under the order or authority of the city council."

That "after receiving and considering the reports from the city engineer and city tax assessor hereinbefore provided for, if the city council is then of the opinion that the proposed improvement or improvements shall be made, the city council shall direct the city engineer to prepare a complete specification for the same, which specification shall prescribe the manner in which the work shall be done, and the nature, quality and character of the materials to be used, and shall also contain such other provisions as the city council shall deem proper. When such specifications are submitted to the city council by the city engineer, they shall be amended by the city council to whatever extent they may deem proper, subject to the provisions of this act, and may then be adopted by the city council. If a majority in value of the resident real estate owners within any such improvement district shall in writing petition the city council to make any such improvement or improvements according to specifications or of materials designated in such petition, or shall by petition specify how the cost of the same shall be taxable against the owners of real estate within such improvement district shall be paid, within the authority and limitations prescribed by this act, it shall be mandatory on the city council, if such improvement or improvements shall be made at all, to comply with such petition, and, in that event, such improvement or improvements shall be made of the materials and according to the specifications designated in such petition, the city council to have the power to add such details and other provisions to such specifications, not inconsistent with said petition, as the city council shall deem proper."

That "before the construction of such improvement or improvements shall be finally ordered, and subject to the provisions of this act, the city council shall by resolution or otherwise determine how the costs of the same shall be paid, whether wholly by the owners of the real estate within such improvement district, or in part by such owners and in part out of the general revenues of the city or other revenues or resources that may be properly appropriated for that purpose."

That "after the proceedings hereinbefore provided for the city council

shall cause at least ten days' notice to be given to all persons and cor-
porations owning any real estate within such improvement district,
or any interest in such real estate, and any and all persons or corpo-
rations in any way interested in such proposed improvement or im-
provements, or in any manner in which the cost of the same is paid,
which notice shall briefly state the nature of such proposed improve-
ment or improvements, and shall refer to the specifications for further
particulars, and shall state the limits of such improvement district,
and shall notify all such persons and corporations to file in writing
with the city secretary any objection that they may have either to the
making of such improvement or improvements, or to the manner in
which the cost of the same is to be paid, or to the manner in which said
improvement district is constituted, or any other objections any such
person or corporation may desire to present. Such notice shall state
the time when such objections shall be filed, which time shall be after
the final publication of such notice, and such notice shall be served by
causing the same to be published for at least ten days in a daily news-
paper of general circulation in the city. A newspaper published on
all week days but not on Sunday shall be deemed a daily newspaper
within the meaning of this act."

That "at any regular or adjourned meeting of the city council, or
any special meeting called for that purpose, after the lapse of the time
provided for receiving objections as hereinbefore provided, the city
council shall hear and determine all objections that may have been
filed, and such hearings may be continued from time to time until all
such objections are fully considered and disposed of. At such hearing
or hearings full opportunity shall be given to the parties filing such ob-
jections to present the same to the city council, together with any proper
evidence in support of such objections that they may desire to offer, and
the city council shall thereupon make such orders and directions on
such objections as may be just and proper, and any and all such ob-
jections not so presented shall in any subsequent judicial or other pro-
ceedings be considered as waived."

That "if it shall appear from such objections filed that the owners
of two-fifths in value of real estate within such improvement district
are opposed to making of such improvement or improvements, the cost
of which is to be charged in whole or in part against them, in that
event the city council shall so declare, and shall not order said im-
provements to be made. If a majority in interest shall fail to object,
in the time and manner hereinbefore specified, the city council shall
have the power to order such improvement or improvements made, and
to provide for the payment of the cost of same as provided by this act,
and as otherwise provided in said city charter."

That "if it shall appear upon the hearing of such objections that any
real estate within such proposed improvement district will not be
specially benefited by such proposed improvement or improvements in
proportion to its value, and to an amount at least as great as its pro rata

of the cost of such proposed improvement or improvements (or its pro-
rata of so much of said cost as is to be paid by the owners of the real
estate within such improvement district), in either of such events such
real estate shall be excluded from such improvement district, and the
remaining real estate shall be constituted and established as such im-
provement district. If no such objection shall be made, or if no such
objections that are made shall be sustained, in either of such events the
real estate within the limits originally proposed shall be constituted and
established as such improvement district."

That "no real estate of any kind within such improvement district
shall be exempt from any of the taxes and assessments and charges au-
thorized by this act."

That "after hearing and disposing of any and all objections, remon-
strances and petitions that may have been filed in accordance with the
preceding sections of this act, and after finally settling the limits of
such improvement district, and after the specifications for such im-
provement or improvements, and after determining how the cost of
the same shall be paid, the city council shall order an advertisement
for sealed bids for the work. * * * The contract for the work
shall be awarded by the city council to the bidder whose bid is in
their judgment most advantageous to the city, and to the property
owners who are to contribute to the payment of the cost of the work.
The city council shall have power in its discretion to reject any and all
bids, or parts of bids, and shall reject any bid or bids if requested so to
do by the written petition of the majority, in value, of the real estate
owners within such improvement district, and one week shall be al-
lowed after opening bids for filing of any such petition or petitions."

That "at or before the time the contract for the work is awarded
the city council shall, by ordinance or resolution, make due and proper
provision for payment of the cost thereof. The amount, if any, to be
paid by the city at large shall be duly appropriated for that purpose
out of the available funds or resources properly applicable thereto; and
the amount to be paid by the owners of real estate within such improve-
ment district, together with all interest that may accrue thereon, and
the cost of levying, assessing and collecting taxes on such real estate,
for the payment thereof, shall be declared a lien upon such real estate,
and to be levied, assessed and collected from time to time, according
to the assessed value of such real estate, until such amount and all in-
terest thereon shall be paid and discharged."

The act then, after giving the city the right to issue either street
improvement, district warrants or street improvement district bonds in
payment of so much of the cost of the work as may be chargeable
against the owners of real estate within such improvement district, pro-
vides that "such warrants or bonds may be issued direct to the con-
tractor in payment for the work, or such warrant or bonds may be sold
and the proceeds paid the contractor in payment for the work;" and
that "whether bonds or warrants are issued, in either event no tax

shall be levied for any one year on any real estate within such improvement district for the purpose of paying the same in whole or any interest thereon, or for the purpose of providing for interest and a sinking fund, which, including all other city taxes, shall exceed two and one-half per cent on the assessed value of such real estate; but, for the purposes aforesaid, taxes, including all other city taxes, may be annually levied to an amount not exceeding two and one-half per cent of such assessed value, without any vote of qualified voters or taxpayers, except as provided by this act."

That "bonds authorized by this act to be issued shall be payable, principal and interest, at such time and place and shall bear such rate of interest as the city council may direct. They shall state the purpose for which they are issued, and the number of the improvement district on account of which they are issued. And shall not be issued until the amount chargeable against the real estate within such improvement district shall be ascertained, and shall not be issued in excess of such amount. Due provisions shall be made to assess and collect annually, upon and from the real estate within such improvement districts, a sufficient amount to pay the interest thereon and create a sinking fund of at least one per cent thereon."

That "warrants authorized by this act to be issued may be issued, subject to the provisions of this act, in such denominations and bearing such rate of interest as the city council shall direct. They may consist of different series, each series to mature annually until they become due. Such series shall be so arranged that so far as practicable, in the judgment of the city council, the annual charge for interest and principal shall be approximately the same. Such warrants may be divided into as many annual series as the city may direct. They shall state the purpose for which they are issued, and the number of the improvement district on account of which they are issued. They shall not be issued until the amount chargeable against the real estate within such improvement district shall be ascertained and shall not be issued in excess of such amount. Due provision shall be made to assess and collect upon and from the real estate within such improvement district a sufficient amount to pay the principal and interest on such warrants as they mature, which amount shall be not less than sufficient to pay the interest and at least 2 per cent of the total principal of said warrant. Such bonds or warrants shall be in such form as the city council may direct or approve, subject to the provisions of this act, and shall be signed by the mayor and attested by the city secretary and seal of the city, and shall be assignable, negotiable and collectible in all respects as other valid obligations of the city."

That "the provisions of the city charter of the city of Dallas limiting the bonded debt of the city shall not apply to street improvement district bonds or warrants issued under the provisions of this act."

That "all laws requiring the registration of city bonds with the Comptroller of the State, and the approval of such bonds by the Attor-

ney-General of the State, and regulating and determining the effect of such registration and approval, shall apply to street improvement district bonds issued under the provision of this act."

Under this act the city of Dallas constituted an improvement district of lots fronting and abutting in a portion of Elm Street to provide for the cost of laying an asphalt pavement on said portion of Elm Street, and let a contract to Barber Asphalt Paving Company to lay the pavement, the street railway company on said street to pay the costs of the pavement between the rails and tracks and for two feet on each side, as provided by the city charter, the city to pay one-third and the property owners to pay two-thirds of the balance of the costs, the amount payable by the property owners to be raised by an ad valorem tax on the property within such improvement district, as provided by the amendment of the city charter above quoted.

The appellant is a married man and the head of a family, and owns a lot fronting fifty feet on the south side of Elm Street and extending back a depth of one hundred feet, in said improvement district, which was when said district was created and is now his homestead, being actually occupied by him and his family as a home, as well as used by him as his place of business. According to the last assessment of the city of Dallas, said lot, without improvements, is assessed at $1700 and the improvements at $2250, and such improvements are permanent and valuable, and are actually worth their assessed value.

This suit was brought by appellant against the city of Dallas and the Barber Asphalt Paving Company to enjoin the assessment and collection of the tax upon his homestead situated within said improvement district, upon the ground that the amendment of the charter upon which the proceedings were had creating the improvement district, and the proceeding of the council thereunder in taxing and charging any part of the cost of the improvement of the street against his homestead, are unconstitutional and void and cast a cloud upon his title to such property. In his petition the appellant prayed that all of said proceedings be declared null and void, that the levy, assessment and collection of all taxes under said proceedings be enjoined.

The case was tried by the court and the relief prayed for denied and plaintiff's petition dismissed.

From such judgment this appeal is prosecuted, and the matters and facts as above stated by us are, for the purpose of this appeal, agreed upon by the parties.

*Opinion.*—The only question presented for our determination in this case is the constitutionality of the amendment of the city's charter under which the proceedings of the city council creating the improvement district, and its action in subjecting appellant's property to the tax assessed against it by virtue of the provision of said amendment, were had.

Before proceeding to a decision of this question we will state some

general principles of law we deem applicable, which will govern us in its determination.

It is for the Legislature to determine all questions of State necessity, discretion or policy involved in ordering a tax and in apportioning it (Thomas v. Gay, 169 U. S., 264), and to make all the necessary rules and regulations which are to be observed in order to produce the desired returns, and must decide upon the agencies by means of which collections shall be made. This results from the power and discretion of that coordinate branch of the government. The judicial power can not legitimately question the policy or refuse to sanction the provisions of any law not inconsistent with the fundamental law of the State. Merriwether v. Garrett, 102 U. S., 472; Hardenburg v. Kidd, 10 Cal., 402. What property shall be embraced within a municipal corporation or taxing district, and whether it shall be taxed for municipal purposes, are political questions to be determined by the law-making power, and an attempt by the judiciary to revise the legislative action would be a usurpation. Norris v. City of Waco, 57 Texas, 635. It is only when the Legislature has abused its powers and transcended its legislative function by the enactment of that which is called a tax, but which is not such in fact, that the department of the judiciary can call in question the legislative enactment. There are personal and private rights, involving individual liberty and individual property, subject to invasion by the community or other individuals. These are protected by the Constitution of the State, and by a system of fixed laws defining those rights and appointing the remedies by which they are to be preserved and guarded even against the combined force of the whole community. And it is for the judicial department to see that the protection guaranteed by the Constitution to personal and private rights is enforced and not invaded even by the legislative branch of the government. But so long as the legislation in form and substance conforms to the Constitution, and is not colorable merely, but is confined to the enactment of what is in its nature strictly a tax law, and so long as no constitutional limitations are exceeded or the constitutional right of the citizen violated in the directions prescribed for enforcing the tax, the legislation is of supreme authority, and the courts, as well as all others, must obey. Taxes may be and often are oppressive to the persons and corporations taxed; they may appear to the judicial mind unjust and even unnecessary, but this can constitute no reason for judicial interference. Veazie Bank v. Fenno, 8 Wall., 533; Davidson v. New Orleans, 96 U. S., 97; Merriwether v. Garrett, 102 U. S., 472.

"In large cities pavement becomes absolutely essential, and must be made by the owners of adjoining property, if not provided for by the public. The ability to make profitable use of their property depends upon it, and they might, perhaps, be safely left to provide for it at their own expense, if all property was improved and occupied; and if, when individual action was relied upon, there was any other method of insuring uniformity of action in the time, manner and expense of im-

proving the streets. The necessity, however, for public supervision and direction is made imperative by the likelihood of such diversity of individual views as would prevent conformity and co-operation among property owners; and the necessity for making the improvements a local burden is almost equally imperative, since it is not to be supposed that the State at large would understand and appreciate the absolute need of an improvement which was specially important to comparatively few persons.

"Considered as a city the expense of paving a street may be levied upon the whole city, or a system of improvement may be resorted to analogous to that which is adopted in the construction and working of highways in general; that is to say, the cost of any such work may be assessed upon that part of the city which receives peculiar benefits from it. The latter method would require either a division of the city into taxing districts for several local improvements within it, or the creation of a special taxing district for each improvement, setting apart for the purpose that portion of the city which was believed to receive the special benefits. These special taxing districts are most common, and they are either fixed after an examination of the circumstances of each particular case with a view to ascertaining how far the special benefits extend and what property shares in them, or they are determined by some general rule which, though it may not be strictly just in any particular case, will in the main, it is supposed, apportion all such expenses with reasonable equality and fairness. Whether one course or the other shall be adopted must be determined by competent legislation." Cooley on Taxation, 3 ed., 234.

The power to determine what shall be a taxing district for any particular burden is purely a legislative power, and not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions. This principle, says Judge Cooley, the courts assert with great unanimity and clearness. The Legislature judges finally and conclusively upon all questions of policy, as it may also upon all questions of fact which are involved in the determination of a taxing district. Cooley on Taxation, 3 ed., 336. Such districts may be as numerous as the purposes for which taxes are levied. The district for a single highway may not be the same as that for the schoolhouse located upon it. It is not essential that the political districts of the State shall be the same as the taxing districts, but special districts may be established for special purposes wholly ignoring political divisions.

It is held by the Supreme Court of the United States "that it is within the power of the Legislature of the State to create taxing districts, and to charge the costs of local improvements, in whole or in part, upon the property in said district, either according to valuation or superficial area or frontage, and that it was not the intention of that court, in Norwood v. Baker, 172 U. S., 269, 43 L. Ed., 443, to hold otherwise." Webster v. Fargo, 181 U. S., 394, 45 L. Ed., 912; Shumate v. Heman, 181 U. S., 394, 45 L. Ed., 922; Farrell v. West

Chicago Park Com., 181 U. S., 404, 45 L. Ed., 924; Wormley v. Dist. of Columbia, 181 U. S., 402, 45 L. Ed., 921.

But to uphold the legislation under which the proceedings sought to be enjoined in this case were had, it is not necessary that the powers of the Legislature be extended as far as it was sanctioned by the Supreme Court in Webster v. Fargo and other cases above cited. But it may, so far as this case is concerned, be brought within the rule "that the cost of a local improvement can be assessed upon particular property *only to the extent that it is specially and peculiarly benefited; and since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury.*" 2 Dill. Mun. Corp., 4 ed., p. 935, sec. 761. And this seems to be in accordance with the views expressed by the Supreme Court of this State in Storrie v. Cortes, 90 Texas, 283. Upon the whole, to use the language of the Supreme Court of Indiana in Adams v. Shelbyville, 49 Law. Rep. Ann., 802, "We conclude * * * that the principles applicable to assessments for local improvements are these: The Legislature may create a local taxing district for local improvement purposes, which includes part only of the property within the municipality. The Legislature may declare conclusively that only the property within the taxing districts shall be separately assessed on account of the local improvement within that district. Each parcel of contributing property may be assessed only to the extent that it actually receives special benefits. The taxing district, as a whole, may be assessed only to the extent of the sum of the special benefits actually received by the several parcels of contributing property. The improvement, so far as its cost exceeds the special benefits resulting to the several parcels of property in the taxing district, is a benefit to the municipality at large, and such excess must be borne by the general treasury. Property owners affected by the improvement within a taxing district are entitled to a hearing on the question of specific benefits." All the principles thus enunciated are present in the act of the Legislature under consideration, and everything required by the Legislature in the act has been complied with by the city council.

The legislative power of the State means all of the power of the people which may properly be exercised in the formation of laws against which there is no inhibition, expressed or implied, in the fundamental law. Since the municipal corporation can not exist except by legislative authority, and can exercise no power which is not granted by the Legislature, it follows that the creation of such corporations and every provision with regard to their organization, was the exercise of legislative power which inheres in the whole people, but by the Constitution is delegated to the Legislature; therefore, it is within the power of the Legislature to determine what form of government will be most beneficial to the public and the people in a particular community. It is a well settled principle of constitutional construction that the power of the Legislature can be restrained only by a prohibition, expressed or

implied, from some provision or provisions of the Constitution itself." Brown v. City of Galveston, 97 Texas, 1, and authorities cited.

We can not perceive that any constitutional provision, either State or national, is violated or trenched upon by the act amending the charter of the city of Dallas or the resolution of the city in pursuance of such an amendment creating the improvement districts, or the proceedings had thereunder by the city council providing for the improvement and the assessment and levy of the tax to pay therefor. The appellant's property within the district is enhanced rather than depreciated in value by the provision in the resolution that requires the street railway company to pay the cost of paving between the rails and tracks of its railway and for two feet on either side. This provision is expressly authorized by the original charter of the city, and not affected by the amendment.

The constitutionality of a similar provision in the charter of the city of Houston was upheld by the Supreme Court of this State in Storrie v. Street Ry. Co., 92 Texas, 129. It does not deprive appellant of his property without due process of law. It does not and can not exceed the amount of the ad valorem tax limit on property within cities exceeding ten thousand inhabitants; the tax within the improvement districts is equal and uniform upon all real property in the district. The property upon which it is assessed is enhanced in value beyond the amount of taxes assessed against it, and it being a tax, though it may be regarded as special, appellant's property, though it is his homestead, under section 50, article 616, of the Constitution, even as construed by the Supreme Court in Higgins v. Bordages, 88 Texas, 458, is subject to the levy and payment of such tax. If this be not so, then our homestead laws stand in the way of and prevent government from exercising the powers and functions for which it was inaugurated, and bars the way of progress and civilization.

The judgment it affirmed.

*Affirmed.*

Writ of error refused.