### HESTER & ROBERTS v. DONNA IRR. DIST., HIDALGO COUNTY, No. 1.* (No. 6701.)

(Court of Civil Appeals of Texas. San Antonio. March 8, 1922. Rehearing Denied April 5, 1922.)

1. **Waters and water courses ⚷216 — Power to create irrigation district governed by law in existence at time power was exercised.**

Any question as to the existence of a power to create an irrigation district and to tax property therein must be determined according to the law in existence when the power was exercised.

2. **Statutes ⚷263, 234½, New, vol. 13A Key-No. Series—Are prospective, and not retrospective, unless otherwise expressly provided.**

Legislation has prospective force and effect, and not retrospective, unless provided in the law itself, and not then so as to affect vested rights.

3. **Waters and water courses ⚷225—Under former law inclusion of municipality in irrigation district without submission of question to voters thereof held valid.**

Under Const. art. 3, § 52, and irrigation district laws (Laws 1913, c. 172 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5107—1 to 5107—105]), and (Laws 1917, c. 87 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5107—1 to 5107—117]), an irrigation district created before enactment of Gen. Laws 36th Leg. 2d Called Sess. (1919), c. 28, § 118 (Vernon's Ann. Civ. St. Supp. 1922, art. 5107—118), could include a municipality without submitting the question of whether the municipality should be included to the voters thereof.

4. **Waters and water courses ⚷225—Organization of irrigation district not absolutely void can be questioned only by quo warranto proceeding, and not collaterally.**

The right to include a municipality in an irrigation district can only be questioned by quo warranto proceeding instituted by the state; the district being a governmental agency, and not subject to collateral attack unless absolutely void.

5. **Waters and water courses ⚷231—Assessment of property in city constituting part of irrigation district supplied with water by company which received water from district held valid.**

Where owner of land in irrigation district did not receive water directly from the district, but was supplied by a concern which was supplied with water by the district, and in turn furnished it to such owner and other residents of a city constituting a part of the irrigation district, the assessment of such owner for purpose of paying the irrigation bonds held not invalid on the ground that the owner received no benefit from the irrigation project.

6. **Constitutional law ⚷233, 290(1)—Eminent domain ⚷2(11)— Waters and water courses ⚷216—Assessment of storehouse receiving water from company furnished therewith by district held not unconstitutional.**

Assessment levied on storehouse in city constituting part of irrigation district created under Const. art. 3, § 52, and Laws 1913, c. 172, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—3), held not violative of the equal protection clause of Const. U. S. Amend. 14, or Const. Tex. art. 1, §§ 17 and 19, prohibiting the taking of private property without adequate compensation and without due process of law, though owner did not receive water directly from the district, but, like other inhabitants of the city, was furnished therewith by a company which procured its water from the irrigation district.

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused May 24, 1922.

**7. Waters and water courses ⟨⟩231—Owners of land in irrigation district who did not seek to have land excluded therefrom could not attack validity of assessment in district's action against them for delinquent taxes.**

Owners of land in irrigation district created under Gen. Laws 1913, c. 172, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—3), who did not contest a bond issue, or seek to have their property excluded from the district under sections 17, 18, and 19 (articles 5107—17 to 5107—19), could not attack validity of assessment in district's suit against them to recover judgment for delinquent taxes.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Suit by the Donna Irrigation District, Hidalgo County, No. 1, against Hester & Roberts. Judgment for plaintiff, and defendants appeal. Affirmed.

Gause & Kirkpatrick, of Mercedes, for appellants.

Seabury, George & Taylor, of Brownsville, for appellee.

COBBS, J. This suit was brought by appellee against Hester & Roberts, appellants, to recover judgment for delinquent taxes. The case was presented to the court for adjudication by an agreed statement of facts, under article 1949 of the Revised Civil Statutes.

The case grew out of a contest in which appellants' real estate, a storehouse in Donna, and their personal property, was taxed, with other property in the district, to pay bonds issued by the irrigation district for irrigation purposes.

Upon the agreed facts, the court rendered judgment in favor of appellee against appellants for $1,106.74, amount of taxes for the years 1915 to 1920, inclusive, with penalties, interest and costs and for foreclosure of the tax lien on the property on which these taxes were assessed.

The first and fifth propositions are practically the same, to the effect that at the time the district was created and taxes assessed and levied appellants were receiving water and have ever since received water used by them and their property from Donna waterworks, and not from appellee, paying the usual and customary charge therefor, and for the further reason set out in the fifth proposition that the city of Donna was never properly taken within the district, as no separate vote was taken for that purpose by the resident taxpayers of that city on the subject.

In support of that contention the appellant cites article 5107—118, R. S., and in further support of their position cites two California cases and one from Idaho, in each of which cases the statutory provisions are different from the provisions of the statute in this state on the same subject in some material provisions.

The further attempted elimination of appellants' property from the burden of such tax is because their property, being a brick storehouse, uses water only for domestic purposes, and is not supplied with any for any purposes from appellee. The Donna waterworks, from whom appellants secure their supply, and whom they pay, in turn receive their water supply from appellee district under a contract to furnish water for property within the city; so, if required to pay this tax, it will be double taxation.

[1-3] The district was established in the year 1914, and the power here to create and to tax must be governed by the law in existence at the time. There was in it no requirement that the question should be separately submitted to a vote of the qualified voters therein. Subsequently the law was changed so as to give that right. But all legislation has prospective force and effect, not retrospective, unless expressly provided in the law itself, and not then so as to affect vested rights, and hence the law in existence then must govern the rights of the parties now. The statute enacted July 25, 1919 (see section 118a, c. 28, Gen. Laws 36th. Leg. 2d Called Sess. [Vernon's Ann. Civ. St. Supp. 1922, art. 5107—118]), thereafter, gave the right to taxpayers by separate vote as to whether the municipality should be included therein. But at the time of the creation of the district there was no such right reserved. Section 52 of article 3 of the Constitution gave the right to the Legislature to pass laws for one district to embrace a part of or the whole of another, and that is true whether it includes a municipality or some other kind of a district. Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871.

[4] If the power delegated for the creation of the district is, as we believe, a governmental agency, and a body politic and corporate to act, it was the exercise of a quasi judicial function, and its right to so act should only be questioned by quo warranto proceeding instituted by the state. It cannot be here attacked in a collateral proceeding unless absolutely void, which is not the case. Wilmarth v. Reagan (Tex. Civ. App.) 231 S. W. 445.

It was not void, for said section 52 of article 3 of the Constitution makes the express grant of power to create improvement districts, declaring "which may or may not include towns, villages or municipal corporations."

The irrigation district laws of 1913 (chapter 172) and 1917 (chapter 87), and later acts (Laws 1919, c. 28 [Vernon's Ann. Civ. St. Supp. 1922, art. 5107—1]) declared:

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Such districts may or may not include within their boundaries, villages, towns, cities and municipal corporations, or any part thereof."

The inclusion of towns until July 25, 1919, depended upon the action of the commissioners' court in the first instance; then upon the vote of the resident property tax payers in the district at large therein in the second instance.

This authority could be delegated by the Legislature to the commissioners with or without a vote of the resident property taxpayers and still be constitutional. Kinney v. Zimpleman, 36 Tex. 554, 557, 581; Kettle v. City of Dallas, 35 Tex. Civ. App. 632, 80 S. W. 874, 877; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

[5] The second proposition challenges the judgment upon the ground that its effect is to further an irrigation project when their property receives no benefit from the same by virtue of the district's refusal and its inability to extend its facilities for irrigation to appellants' property, and contends that the tax sought to be levied amounts to confiscation of their property. That only those who are engaged in agricultural pursuits are benefited, and the others are not. Here it is again urged that it is against the alleged fundamental principle of taxation which must be public in its purpose, reasonably just and equal in its distribution, and is in violation of that great principle that all liberty-loving people revere, support, bless, and uphold the sacred Bill of Rights. We would not for one moment depart from its fundamental principles, upon which rests the power and glory of a great government. There is nothing here that strikes at its doctrine or in the least tends to weaken its strength or power. There is nothing in the cases cited that can be said supports the appellants' contention on that ground.

While the cases cited from California and other states first in the field of irrigation are instructive and interesting in the development of the plan and from which our own may be largely drawn, yet our own statutes in many particulars differ. And the reason of the rule that would make such statutes authority there ceases to be other than instructive here, where the statutory lines run smoothly along with our own laws.

It must not be overlooked that, while the city of Donna has refused to extend its irrigation to appellants' store, the district has no system of canals and laterals for irrigating the city in general, yet does furnish water for cultivated lands in the city and supplies water through one of its canals to the Donna Water Company, as unincorporated concern in the city, which supplies the citizens with water. That company operates a pump, standpipe, and system of pipes in said city and furnishes water for hire for domestic purposes to the inhabitants of the city. This arrangement was in existence upon the creation of the district between said waterworks and La Donna Canal Company, from which the district purchases its original irrigation system. Barstow v. Ward County Irrigation District No. 1 (Tex. Civ. App.) 177 S. W. 563.

Of course, while the arrangement thus made requires the payment of bond taxes on the basis of the value of the property values, they pay to the waterworks company a sum of money for water service for domestic purposes.

[6] The third and fourth assignments of error, in effect, present in the same general way the question, under both the federal and state constitutions, the power of the Legislature to authorize the tax sought to be levied, because also in violation of the Fourteenth Amendment of the Constitution of the United States, the "equal protection" clause, as well as in violation of article 1, § 17, of the Constitution of the state of Texas and section 19 of the same article, which prohibits the taking of private property without adequate compensation and without due process of law.

As already seen, such taxes are authorized to be levied under section 52 of article 3 of the Constitution of Texas and the irrigation act passed by the Legislature in 1913. Now, as it is not shown the territory wherein the taxes are sought to be levied, but are within the irrigation boundaries where irrigation is necessary for agricultural purposes, notwithstanding, the area embraces the town of Donna, wherein lies the property of appellants. The creation of that district was in the due process of the law and in violation of neither the federal nor state Constitution. The creation of the district involved an adjudication of its necessity, and the "construction and purchase of the proposed irrigation plant is favorable and practicable, and that it is needed, and a public benefit, and a benefit to the lands included in the district" was ascertained. Section 3, c. 172, General Laws of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—3).

Irrigation by districts is intended for the benefit of the public. In the territory under discussion it is well understood that lands are in that part of Texas known as the arid portion, and of but little value theretofore except for pasturage purposes. It is not to be doubted that there would be but little value to appellants' and other property in the district without the benefits received from a system of irrigation nurtured and protected by the laws of the great state in the policy adopted in encouraging in every way the plan for the development of that great area of arid land of the entire state from which the territory now known as the "Magic Valley" of

the Rio Grande receives inestimable benefits. The policy of this state has ever been by its laws to encourage immigration, donate land grants for internal improvement and development, and building railroads and "the improvement of rivers, creeks and streams to prevent overflows, and to permit navigation thereof, or irrigation thereof, or in aid of such purposes. * * * The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof. * * * The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof." Section 52 of article 3 of the Constitution of Texas. Step by step has she progressed to the point of providing by modern laws a system of irrigation that makes the dry lands respond to the touch of water like magic indeed to the development of a splendid area where men and women cultivate and are permitted to build happy homes, erect churches and schoolhouses, and become a happy and prosperous people with a citizenship of which this state may well be proud. A mere statement of the policy of Texas in her march of progress and with the development of irrigation is in keeping with the splendid public policy to promote the welfare of her people, and is a complete answer that irrigation is for public purposes, and not private gain.

The only way possible to stimulate such a system is by taxation of all the property of whatever character, kind, or description situated in the respective districts. It may be a question as to whether one so situated as appellants, possessing improved property in a town in the district, is equally, if not more greatly, benefited by the system than one owning purely farm lands or unimproved agricultural lands. Just so, as the lands are improved and become productive through the system of irrigation, must marketable values correspondingly increase in all the lands and property as well as crops grown thereupon and harvested and sold in the money markets of the world. Incidentally private persons and private corporations may be benefited, some more than others, but the plan and purpose of the Legislature was for the general welfare of the whole people, and in such cases to those generally in arid zones. Where the lands are practically dry throughout the whole year and unproductive without irrigation, it was plainly the policy of the law to foster.

This law can never be construed other than as giving a great opportunity to the general public similarly situated, affording the opportunity to them who by wisdom, industry, and energy may take unproductive lands of little value and raise to a land of fruits, vegetables, and flowers, and produce other products from the cultivated fields that may be bartered and sold in all the markets of the country, supplying the general public with the fruits of the soil.

The appellants in the oral argument and brief have attempted to narrow the power of the Legislature in such cases down to exercise only the police power of the state to sanitation purposes, and, among other cases for that position, cite the case of Wharton County Drainage District v. Higbee (Tex. Civ. App.) 149 S. W. 381. That case does not sustain the contention, but Judge Reese, who wrote the opinion, referred to that as one of the powers exercised to support the case, and in the illustration said:

"Questions of public health and general public benefit * * * are to be consulted in the creation of a drainage district, and unquestionably these are matters of great importance."

So do we say, but do not limit that power to the exercise of only one of those functions of the grant of sovereign power.

We do not think there is a single levee or drainage district ever created for the sole purpose of promoting public health in the grants of such power, but that each one was under the general legislative power of promoting a public benefit for a public purpose.

Section 52 of article 3 of the Constitution of Texas provides for the creation of such districts for irrigation purposes and the creation of the debt, and authorizes issue of bonds and the levy of taxes, etc., to pay the same. It contemplates a general ad valorem taxation on all property real and personal. The owners of personal as well as of real property are entitled to vote. Taylor v. Boyd, 63 Tex. 533–541. It makes no difference whatever in this case whether the appellants did or did not receive special or direct benefit from these taxes, for it is wholly beyond the question and does not affect the validity of the law. Norris v. City of Waco, 57 Tex. 635.

[7] There is another question raised to be considered here. The district was organized in 1914 in conformity to laws then in force, and in 1915 issued $750,000 of bonds and $500,000 additional in 1919. Both issues were authorized to be settled by the votes of the property tax payers in the district and validated by a decree of the district court as provided by the law. There was no contest filed by appellants either of the creation of the district or in the validation suits. There was no attempt made by them to pursue the remedy to have their property excluded from the district.

With the single exception of all the Western States that provide that the board of supervisors or such body as organizes the district to be conclusive against collateral attack is perhaps the state of Nebraska, if it does. The attack made as to the conclusive-

ness of such statutes and that they do not in their operation constitute due process of law has been turned down alike in the federal as well as state jurisdictions. Knowles v. New Sweden Irr. Dist., 16 Idaho, 217, 101 Pac. 81, 87; Oregon Short Line R. Co. v. Pioneer Irr. Dist., 16 Idaho, 578, 102 Pac. 904; Crall v. Poso Irr. Dist., 87 Cal. 140, 26 Pac. 797.

The statute itself (see sections 17, 18, and 19 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5107—17 to 5107—19]) was evidently inserted as a legal method of procedure whereby owners of lands were afforded a remedy to secure the elimination of their lands from the district. It affords ample time for such opposition by a public hearing before the board, and, if it be the judgment of the board that the lands are not susceptible to irrigation from the system, "then such nonirrigable lands shall be excluded therefrom." No petition for exclusion is permitted to be filed after the 30-day period after the election creating the district and electing its directors. This would seem to be to protect the purchasers of bonds after that period, so as to permit no question to arise as impairing the obligation of contract as respecting the validity of the bond issue or their value when exhibited on the public market for sale. These proceedings, together with the decree of the district court, constitute a quasi proceeding in rem. And this also applies to a city or town, or contracts with a city or town within the created district to supply it with water and charge for the use and delivery of such water, and the time and manner of payment therefor shall be determined by the board of directors and be specified in the standing order of the board.

The acts of the board of directors in this matter seem conclusive by the decree of the court as well as by the validating decree and also by the act of the Legislature validating this and other similar irrigation districts organized before March 19, 1917.

To say, because appellants get no direct special benefits from the law is no greater argument against its validity than to say, because a man living within a school district with no family or children to go to school gets no benefit from the school district, his property should not be taxed. Both purposes are public in their purpose and nature.

It will be observed from what we have said that these taxes are in no sense local or special, based on special benefits received by the property taxed, but are general and ad valorem, levied by a public corporation to pay bonds that have been lawfully issued and validated by a decree of a court of competent jurisdiction.

Finding no error committed in the trial of this case, the assignments are overruled, and the judgment of the trial court is affirmed.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes