HAWLEY et al. v. WARLICK, County Judge, et al. (No. 2551.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 18, 1925. Rehearing Denied Dec. 16, 1925.)

Highways ⚖➝90—Taxation ⚖➝44—Road district created under statute held a body corporate, and issuance of bonds not to violate requirement that taxes be equal and uniform.

A road district created under Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 637, pursuant to Const. art. 3, § 52, became for road taxing purposes a body corporate and a separate and distinct entity, and issuance and sale of bonds and taxation of property in district for their payment would not violate constitutional requirement that taxes be equal and uniform, though property in district was already subject to tax for payment of county bonds.

Appeal from District Court, Wilbarger County; J. V. Leake, Judge.

Suit for injunction by C. C. Hawley and others against O. T. Warlick, county judge, and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

See, also, 267 S. W. 332.

Cook, Cook & Cole, of Vernon, and Albert G. Walker, of Wichita Falls, for appellants.

Berry, Stokes & Killough, J. A. Storey, and O. O. McCurdy, all of Vernon, and W. P. Dumas, of Dallas, for appellees.

JACKSON, J. This suit was originated in the district court of Wilbarger county, Tex., and was prosecuted by C. C. Hawley, A. M. Hiatt, R. L. Castlebury, Lon Byars, F. H. Wright, Ottomar Thieme, W. E. Gandy, A.

C. Boger, and H. L. Harrell, plaintiffs, against J. V. Townsend, county judge, A. M. Bourland, W. S. McDonald, J. M. Reynolds, and R. Cobb, commissioners, composing the commissioners' court of Wilbarger county, defendants.

Plaintiffs allege:

That they are residents of Wilbarger county, and are property taxpayers in road district No. 4, situated in said county. That the commissioners' court of the county, in obedience to an election duly held in said county, issued and sold county road bonds in the sum of $600,000, which bonds are valid and outstanding obligations against all the property in the county, including the property of plaintiffs situated in road district No. 4, and taxes have been and will continue to be levied and collected against the property of plaintiffs in said road district No. 4, as well as all other property in the county subject to taxation, to pay the interest and to create a sinking fund to discharge said county bonds at their maturity. That the purposes of the issuance and sale of said bonds were to obtain funds with which to retire bonds in the sum of $94,500 that had been issued and were valid and outstanding against road district No. 1 in said county, and to improve and pave certain county highways running through the county, one of which was a first-class road extending from the west boundary line through Vernon, the county seat, to the east boundary line of the county, which road constitutes a portion of the Gulf to Colorado highway, and which is a part of the Texas highway system. That the outstanding bonds against said road district No. 1 were redeemed, and the principal part of the remainder of the proceeds obtained from the sale of the $600,000 issue of county bonds was used by the commissioners' court, under the supervision of the state highway department, in improving and paving said Gulf to Colorado highway in the county, and with these funds, together with federal and state aid, about 16 miles of said highway were finished, and the proceeds of the sale of the $600,000 county bond issue were practically exhausted, leaving about 12 miles of said highway east and south of the town of Oklaunion unfinished. That thereafter, to procure additional funds for the completion of said Gulf to Colorado highway, and the improvement of other highways in the county, and to enable the county to secure federal and state aid, on a valid petition therefor, the commissioners' court ordered another election to determine whether or not an additional $600,000, in county road bonds should be issued by the commissioners' court, and at the election such county bond issue was defeated. That thereafter Frank Stark and 120 other persons duly petitioned the commissioners' court to create road district No. 4 in Wilbarger county, and also filed a sufficient petition praying that the court order an election in said district No. 4 to determine whether or not the bonds of said district in the sum of $150,000 should be issued and sold to complete the Gulf to Colorado highway and pave the Lee highway. That on the same day the district was created, and the election on the bond issue in said district was ordered and, in due time, carried. That thereupon the court passed its order to issue the bonds and to levy a tax on the property in said district to pay the annual interest thereon and to create a sinking fund for the payment of said $150,000 road bonds of district No. 4 at their maturity.

That road district No. 4 was carved out of Wilbarger county so as to include the unfinished portion of the Gulf to Colorado highway and the Lee highway, and the bonds to be issued on the faith and credit of said road district were not for the purpose of, and the proceeds from the sale thereof will not be used for, improving the roads in said road district No. 4, but for the purpose of completing the Gulf to Colorado highway and the Lee highway, both of which are county roads running through the county, and are a part of the state highway system, under the jurisdiction of the state highway department, and state and federal aid are being used in their construction. That the county has already spent several hundred thousand dollars on said two highways, and the property of plaintiffs, and all other taxable property in said road district, is taxed to pay its pro rata part of the interest and sinking fund on the county road bonds. That if the bonds for $150,000 voted in road district No. 4 are issued and sold and the proceeds expended on the Gulf to Colorado highway and the Lee highway, the property of these plaintiffs, together with all other property in said road district No. 4, will be doubly taxed to pay for said two highways. That to tax the property in said road district No. 4 to pay its proportion of the $600,000 county road bond issue to build and maintain said highways, and to tax the property in said district to pay district bonds in an additional sum of $150,000 to be expended on said highways through said district, is in violation of the Constitution of the state, which requires taxes to be equal and uniform. That unless restrained, the defendants, composing the commissioners' court of Wilbarger county, will proceed to issue and sell said bonds and expend the proceeds thereof on said two highways and levy and collect taxes on the property of these plaintiffs and the other taxable property in said road district to pay the annual interest and create a sinking fund for the payment of said $150,000 at the maturity of said bonds.

Plaintiffs seek a perpetual injunction restraining the defendants from issuing and selling the bonds voted in road district No. 4 and from levying any tax on the property situated in district No. 4 for the payment of

the interest and the payment of the sinking fund for the discharge of said bonds at their maturity.

The defendants sought to have the suit abated for the reason that it appears from plaintiffs' petition that road district No. 4 was legally created by the commissioners' court upon a petition signed by Frank Stark and 120 others, and is now a quasi public corporation, recognized as such by the proper officers of the county and state, and its existence and right to act as such corporation could be attacked only by quo warranto proceedings instituted by the state, and the plaintiffs failed to show that their position is such as would entitle them to maintain the suit in behalf of the state. They answered by general demurrer and special exception, attacking the capacity of plaintiffs to maintain the suit, general denial, and specially denied that the only purpose of the $600,000 bond issue of the county was to raise funds to retire the outstanding bonds in road district No. 1 and improve certain county highways running through the county, but allege that in addition to the purchase of the road bonds against road district No. 1, the remainder of said $600,000 bond issue was for the purpose of the further construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof, throughout the county, and that before the election, certain roads were designated by the commissioners' court upon which the proceeds of the bonds would be expended, and attach to and make a part of their answer a certified copy of an order passed by the commissioners' court, reading as follows:

"The commissioners' court of Wilbarger county, Tex., has to-day ordered an election for an issue of county road bonds in the sum of $600,000; $94,500 of which to purchase district roads in road precinct No. 1, and $505,500 for further construction, maintenance, and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof, throughout said county, and said court purpose to construct concrete or other hard-surface roads including necessary drainage structures, two miles further towards Oklaunion; 2¾ miles from city limits west on and with Wilbarger street to S. W. cor. of Fair Grounds; thence north to Pease River Bridge ½ miles from north end of said bridge on highway towards Chillicothe; 1⁵⁄₁₀ miles south from city limits to Paradise creek on road to Seymour; ⁷⁄₁₀ miles north from city limits to Lower Pease River Bridge and ½ miles from north end of said bridge to top of hill on road to Fargo, and purpose to further extend the concrete or other hard-surface paving towards Oklaunion and Chillicothe in near equal distances, as far as funds will be available, including federal and state aid, after setting aside $200,000 for construction and maintenance of roads and drainage structures throughout the county, to be divided $50,000 to each commissioners' precinct to be spent under the discretion and direction of the commissioner of the respective precincts, subject to the approval of the commissioners' court."

The defendant specially denied that the taxes to be levied and collected in payment of the principal and interest of the $150,000 road bonds of road district No. 4 would cause the property in said district to be taxed contrary to the provision of the Constitution, which requires equal and uniform taxation, and allege that the tax rate on each $100 valuation of taxable property in the district is the same on all property within said district.

The court overruled defendants' plea in abatement, general demurrer, and special exception, heard the case without the intervention of a jury, and at the conclusion of the testimony rendered judgment in favor of the defendants, hereinafter called appellees, on the merits, and denied plaintiffs, hereinafter called appellants, all relief.

Appellants' assignments are closely related and may be reduced to the contention that the court committed error in refusing them the relief they sought, because the property in road district No. 4 of Wilbarger county is, and will continue to be, taxed to pay its share on the $600,000 county road bonds, the proceeds of which have been largely expended on that part of the Gulf to Colorado highway lying outside of said district, and to tax the property in said district only, for an additional sum of $150,000 to obtain funds with which to improve and pave said Gulf to Colorado highway through said district is unjust, inequitable, and prohibited by law and the Constitution of the state which provides that all taxes shall be equal and uniform.

The court's findings of fact, in so far as they are necessary to a disposition of this case, are to the effect that the $600,000 county road bond issue was valid and was to be expended on roads throughout the county, and that the money, except a small remnant thereof derived from the sale of said bonds, had been legally and properly expended as provided by the order of the commissioners' court (copied above). That road district No. 4, on a proper petition therefor, was legally created by the commissioners' court, and an election, regularly ordered and held in said district to determine whether or not road bonds of said district in the sum of $150,000 should be issued and sold for the purpose of constructing, maintaining and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof within said district, and to determine whether or not a tax should be collected to discharge said bonds; that at said election the bonds were carried, and it is the intention of the proper authorities to use the proceeds obtained from the sale thereof in constructing, maintaining, and operating macadamized, graveled, or paved roads, or in aid thereof within said district

No. 4; that the evidence does not tend to prove that the taxes on the property situated in said road district No. 4 will not be equal and uniform by reason of the issuance of the bonds of said district in the sum of $150,-000. These findings are not attacked by appellants.

Section 52 of article 3 of the Constitution of the State of Texas provides:

"That under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit: * * * The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Under the authority of this constitutional provision, the Legislature of the state enacted the statutory provisions under which appellees acted in creating road district No. 4 of Wilbarger county, and in ordering the election therein to determine whether or not the bonds of said district should be issued and sold and the proper taxes levied and collected to pay the annual interest accruing thereon and to create a sinking fund for the discharge thereof at their maturity.

Article 627, V. S. C. S., empowers:

"Any county in this state * * * or defined district, now or hereafter to be described and defined, of a county, * * * to issue bonds * * * in any amount not to exceed one-fourth of the assessed valuation of the real property of such county, * * * or defined district thereof, and to levy and collect such taxes to pay the interest upon such bonds and provide a sinking fund for the redemption thereof, for the purpose of constructing and maintaining and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof."

In Moore v. Commissioners' Court of Bell County et al. (Tex. Civ. App.) 175 S. W. 849, it is held that the above constitutional provision, and said article 627, together with the other articles of the statute up to and including article 641, authorizes the commissioners' court, when acting in conformity with the proceedings directed by the statutes, to create "defined districts" for road purposes.

Article 637, V. S. C. S., reads:

"For the purpose of this subdivision of this chapter, any political subdivision of a county or defined district, now or hereafter to be described and defined, accepting the provisions of said subdivision, by voting such tax, is hereby made and created a body corporate, which may sue and be sued in like manner as counties."

Under this statute, a road district, properly created, becomes a body corporate for the limited purposes intended and acts by and through the commissioners' court. Horn v. Matagorda County et al. (Tex. Com. App.) 213 S. W. 934; Jackson et al. v. McAllister et al. (Tex. Civ. App.) 196 S. W. 671; Denton County et al. v. Sauls et ux. (Tex. Civ. App.) 265 S. W. 1091.

Road district No. 4 in Wilbarger county, with its territory described by metes and bounds, was created according to law, accepted the provisions of the statute by voting the tax on the taxable property therein at the election regularly held therefor, and became, for road taxing purposes, within the constitutional limitations, a taxing district with a separate identity and a distinct entity. Simmons et al. v. Lightfoot, Attorney General, 105 Tex. 212, 146 S. W. 871.

Judge Stayton, speaking for the Supreme Court in the case of Norris v. City of Waco, 57 Tex. 635, uses this language.

"Taxes are said, within the meaning of the Constitution, to be 'equal and uniform,' when no person nor class of persons in the taxing district, whether a state, county, or other municipal corporation, is taxed at a different rate than are other persons in the same district upon the same value or the same thing, and where the objects of taxation are the same by whomsoever owned, or whatever they be."

In Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553, Chief Justice Phillips, speaking for the Supreme Court, holds that—

Section 52, art. 3, of the Constitution, a portion of which is quoted supra, "upon the general subject of road improvement * * * marked a radical departure from the previous policy of the state. * * * The former bounds of taxation for their construction and maintenance were set aside, and the political subdivisions named, in addition to all other debts, were, under legislative provision, given authority upon a requisite vote to issue bonds in the liberal amount of one-fourth of the assessed valuation of the real property of such districts. * * * Different units for the necessary taxation, and therefore different units for the beneficiaries of the taxation, from those theretofore existing, were thus authorized."

In support of the conclusion that appellants are not entitled to the relief they sought, we cite Robbins, Tax Collector, et al. v. Limestone County et al, (Tex. Sup.) 268

S. W. 915; Meurer et al. v. Hooper et al. (Tex. Civ. App.) 271 S. W. 173; Robertson v. Key, County Judge, et al. (Tex. Civ. App.) 240 S. W. 1013; Temple Lumber Co. v. Commissioners' Court of Sabine County (Tex. Civ. App.) 239 S. W. 668; Bell County v. Hines, Director General of Railroads (Tex. Civ. App.) 219 S. W. 556; Dallas County Levee District No. 2 et al. v. Looney, Attorney General, 109 Tex. 326, 207 S. W. 310; Kettle v. City of Dallas et al., 35 Tex. Civ. App. 632, 80 S. W. 874.

It is unnecessary, in our opinion, to discuss appellee's cross-assignments of error assailing the action of the trial court in refusing to sustain their plea in abatement, general demurrer, and special exception, for the reason that the trial court correctly denied appellants all relief.

The judgment is affirmed.